ANTONIO SABATINELLI *vs.* DANIEL M. BUTLER
(and a companion case).

Worcester.   January 4, 1973. — May 8, 1973.

Present: TAURO, C.J., QUIRICO, BRAUCHER, HENNESSEY, & WILKINS, JJ.

*Intentional Conduct. Negligence,* Intentional conduct, Of parent.
*Parent and Child. Minor. Error,* Whether error harmful.

In an action of tort for personal injuries, the judge properly di-
rected a verdict for the defendant on a count alleging that he
negligently shot the plaintiff where the jury found that the de-
fendant shot the plaintiff deliberately and intentionally.  [566–568]
In an action of tort for personal injuries, the judge properly directed
verdicts for a defendant's father on counts alleging that he
willfully and also negligently allowed his minor son to have and
to use a gun, resulting in injury to the plaintiff, where there was
no evidence that the father knew or should have known of any
misuse or propensity for misuse of guns or other weapons on the
part of the son.  [568–571]
In an action of tort for personal injuries against a son and his father
by one who had been shot by the son, exclusion of a medical ques-
tionnaire completed by the son's mother when he was sent to a
hospital for observation after the shooting was not reversible
error where there was nothing in the questionnaire that indicated
that the father knew of any propensity of the son to commit
vicious acts.  [571]

TWO ACTIONS OF TORT.   Writs in the Superior Court
dated January 8, 1969, and September 11, 1969.
The actions were tried before *Beaudreau, J.*
*Terence F. Riley* for the plaintiff.
*William C. O'Neill, Jr.,* for the defendants.

TAURO, C.J.   The plaintiff brought actions in tort
against Daniel M. Butler, and against Daniel's father,
Raymond Butler.   The declaration (in two counts)
against Daniel alleges (1) that he unlawfully shot
the plaintiff and (2) that he used a dangerous instru-
mentality negligently which resulted in the unlawful
shooting.   The declaration against Raymond (also in
two counts) alleges (1) that he "knowingly and will-

fully allow[ed] an improper and irresponsible person to have and to use a dangerous instrumentality" and (2) that he "negligently allowed his son . . . to possess and use a gun."

At the close of the evidence, subject to the plaintiff's exceptions, the judge directed verdicts for the son on the second count and for the father on both counts. The jury returned a verdict for the plaintiff in the amount of $7,500 against the son on the first count. The cases are before us on the plaintiff's consolidated substitute bill of exceptions.[1]

Viewing the evidence most favorable to the plaintiff, the jury could have found that on the night of November 21, 1967, Daniel Butler, without provocation or cause, shot the plaintiff while he was returning home from his place of employment. Daniel testified that "he saw Mr. Sabatinelli walking along the street; that he knew he was a human being, but wasn't too sure it was a man; that he stopped his car, loaded the shotgun, rolled down the window of his car, aimed the gun at the plaintiff's back and pulled the trigger and the gun went off; that when the pellets hit Mr. Sabatinelli, he cried out, and with that, the defendant got scared and drove away; that about two weeks later, he went down South and came back around the middle of January, 1967 [*sic*, should be 1968], and went to the police and told them what he did; . . . that in May, 1968, he pleaded guilty . . . to assault with a dangerous weapon . . . [and] assault and battery with a dangerous weapon . . . [and] received a sentence of seven to ten years in Walpole."

1. The plaintiff maintains that the judge erred in

---

[1] General Laws c. 231, § 113, as amended through St. 1971, c. 843, § 13, states that a bill of exceptions "shall be reduced to writing in a summary manner." The plaintiff's consolidated substitute bill of exceptions is extremely lengthy, repetitious and unnecessarily interspersed with long passages from the transcript and with other irrelevant matters. Counsel proceeds at his own and his client's peril in tendering such a bill of exceptions. *Graustein, petitioner*, 305 Mass. 568. Mottla, Civil Practice (3d ed.) § 1160, pp. 241–243. The court below must insist on compliance with the statute's requirements before approving a bill of exceptions.

directing a verdict for Daniel on the negligence count on the ground that there was evidence that Daniel had failed to exercise reasonable care in handling the gun and that Daniel's violation of certain penal statutes [2] constituted evidence of his negligence. We disagree.

From their verdict on the first count, it is clear that the jury found that Daniel "unlawfully" shot the plaintiff. The parties appear to have proceeded upon the assumption that the first count against Daniel alleges that he intentionally and deliberately shot the plaintiff. It would have made no difference even if the judge had proceeded upon the assumption that "unlawful shooting" in the circumstances only encompassed wanton, wilful or reckless conduct, since "[w]anton or reckless conduct is the legal equivalent of intentional conduct." *Commonwealth* v. *Welansky*, 316 Mass. 383, 401. Therefore, the jury's verdict on the first count indicates a finding that Daniel shot the plaintiff deliberately and intentionally. Having reached such a conclusion, the issue is whether, on the evidence, the jury could properly have found, further, that the defendant's conduct was negligent. We conclude that the jury could not properly reach such a verdict.

In *Miller* v. *United States Fid. & Guar. Co.* 291 Mass. 445, 447, we noted that "negligence and wilful and wanton conduct are so different in kind that words properly descriptive of the one commonly exclude the other." Under the law of the Commonwealth, the difference between intentional and negligent conduct is a difference in kind and not in degree. If conduct is negligent it cannot also be intentional. Similarly, a finding of intentional conduct precludes a finding that the same conduct was negligent. "The words 'wanton' and 'reckless' are thus not merely rhetorical or vituper-

---

[2] In his brief the plaintiff suggests that Daniel violated G. L. c. 269, § 10, as amended through St. 1957, c. 688, § 23 (carrying a dangerous weapon), G. L. c. 269, § 12D (carrying a gun on a public way), and G. L. c. 265, § 15A (assault and battery by means of a dangerous weapon).

ative expressions used instead of negligent or grossly negligent. They express a difference in the degree of risk and in the voluntary taking of risk so marked, as compared with negligence, as to amount substantially and in the eyes of the law to a difference in kind." *Commonwealth* v. *Welansky,* 316 Mass. 383, 399. See *Banks* v. *Braman,* 188 Mass. 367, 368–369; *Freeman* v. *United Fruit Co.* 223 Mass. 300, 302; *Prondecka* v. *Turners Falls Power & Elec. Co.* 238 Mass. 239, 242; *McIntyre* v. *Converse,* 238 Mass. 592, 594; *Isaacson* v. *Boston, Worcester & N. Y. St. Ry.* 278 Mass. 378, 387–388.

In shooting the plaintiff, the defendant Daniel may well have violated various penal statutes. But when such violations result from deliberate and intentional conduct, they cannot be considered as evidence of negligence. In this respect the violation of the statute cannot be treated as different and apart from the conduct that constitutes the violation. The judge, therefore, properly directed a verdict for Daniel on the second count.

2. The plaintiff argues that the judge erred in directing verdicts for Raymond Butler on both counts against him. Although we believe that the counts improperly allege that the same conduct is both wilful and negligent, we have examined the record to discover whether the essential elements of either count are supported.

Daniel Butler was twenty years and eight months old and living with his parents when he shot the plaintiff.[3] The evidence shows that before the shooting took place Raymond Butler knew that his son had been in a "couple of fights" and had received psychiatric treatment while

---

[3] No argument has been made that the son was emancipated at the time of the shooting, and we do not reach that question, but, to the extent that the father's negligence is posited upon his ability to control his son, the age of the son is a relevant factor. Restatement 2d: Torts, § 316, comment c. (General Laws c. 231, § 85G, inserted by St. 1969, c. 453, and as appearing in St. 1972, c. 552, § 1, was not enacted at the time of the shooting.)

in the army. He was aware that his son had been in some "trouble" in the army and, although he did not know the nature of the "trouble," he knew that his son had been asked to leave the army early. Raymond Butler testified that after returning home, his son had been to see a psychiatrist four times. He had encouraged his son to continue psychiatric treatment but the boy had refused. The father observed that Daniel would sometimes come home drunk and was unable to keep a job for any length of time. He had given his son a B B gun as a present and he knew that Daniel kept guns in the cellar of their home which he sometimes used when shooting in the woods nearby, but he testified that he had no knowledge of any violent acts carried out by his son while at school or since returning home from the army.

In *Caldwell* v. *Zaher*, 344 Mass. 590, 592, we stated that the "duty of parental discipline arises when the parent knows or should know of the child's propensity for the type of harmful conduct complained of, and has an opportunity to take reasonable corrective measures." See Restatement 2d: Torts, § 316, pp. 123–124; Prosser, Torts (4th ed.) 872–873; Harper and Kime, The Duty to Control the Conduct of Another, 43 Yale L. J. 886, 893–895; annotation, 68 A. L. R. 2d 782.

The type of harmful conduct complained of in the instant case was the misuse of a gun. The only evidence of Daniel's prior misuse, or propensity for misuse, of a gun or other weapon came from Daniel himself who admitted shooting at someone's window during the same journey in which he shot the plaintiff. Obviously his father had no prior knowledge of this event. Although Daniel testified that he had slashed a bulletin board with a knife while in the army, there was no indication that the father knew of this event. In fact, Daniel explained that it was not his custom to tell his father his feelings and that he kept things to himself. There was evidence that about one week before Daniel shot the plaintiff, he had beaten up a companion

on their way home from a drinking bout, but Daniel stated that he had not told his father about the incident.

The son testified he had a license for hunting on public land and that he had four guns in all, two .22's, a pellet gun and a shotgun.[4] He stated that he kept the shotgun in the glove compartment of his car. While in high school, he had attended a four week course on how to handle a gun and had hunted regularly from the age of sixteen years until he went into the army. Although his father had never forbidden Daniel to use guns, he had told him on many occasions that guns were dangerous and had warned him about their use.

Over a number of years, the father had observed his son take a gun and go hunting without mishap. He had properly warned Daniel about the danger of guns. In such circumstances, where there was no evidence that the father knew or should have known of his son's misuse or propensity for misuse of guns or other weapons, the father cannot be held negligent or wilfully irresponsible. *Norlin* v. *Connolly*, 336 Mass. 553, 554. See *DePasquale* v. *Dello Russo*, 349 Mass. 655, 659; *Martin* v. *Barrett*, 120 Cal. App. 2d 625, 628–629; *Pepper* v. *Hoffecker*, 192 Atl. 2d 213, 215–216 (Super. Ct. Del.); *Klop* v. *Vanden Bos*, 263 Mich. 27, 29. The circumstances of this case are to be distinguished from cases where there was evidence that the defendant knew or should have known that it was unsafe to allow the child to have or to use a gun. *Sousa* v. *Irome*, 219 Mass. 273. *Gudziewski* v. *Stemplesky*, 263 Mass. 103.

The fact that the father knew that his twenty year old son was in need of psychiatric help and had a drinking problem was not sufficient to warrant submitting the issues of the father's negligence or wilful irresponsibility to the jury, because, in this case, there was no evidence that the son's problems manifested themselves to the father in terms of a propensity for

---

[4] The record indicates that the plantiff was shot with a "20-gauge shotgun."

reckless or vicious behavior. Cf. *Caldwell* v. *Zaher*, 344 Mass. 590, 592; *Capps* v. *Carpenter*, 129 Kans. 462, 464–466; *Meers* v. *McDowell*, 110 Ky. 926, 927–929; *Charlton* v. *Jackson*, 183 Mo. App. 613, 620; *Davis* v. *Mack*, 15 Ohio Op. 4, 5 (Ohio C. P.).

3. After Daniel's arrest, he was sent to Grafton State Hospital for observation. His parents visited the hospital and Mrs. Butler filled in, and signed, a medical questionnaire concerning her son. She discussed the questions with her husband and he agreed to some, but not all, of the answers. The plaintiff attempted to have the questionnaire admitted as a hospital record under G. L. c. 233, § 79, as amended through St. 1959, c. 200. From a very confusing bill of exceptions it seems that the questionnaire was also offered to impeach the father's testimony.

The plaintiff argues that the judge erred in excluding portions of the questionnaire that relate to Raymond's knowledge of his son's condition prior to the shooting. The hospital questionnaire was shown to Raymond Butler several times during the trial and he replied to questions after reading his wife's written answers.

Assuming, without deciding, that the questionnaire was admissible as a hospital record or for purposes of impeachment, its exclusion was not reversible error since there is nothing in the questionnaire that indicates that the father knew of his son's propensity to commit vicious acts.[5]

*Exceptions overruled.*

---

[5] The questionnaire asked for details to be supplied "[i]f patient has threatened or attacked anyone." In replying to this part of the questionnaire, Mrs. Butler wrote, "[n]ot to our knowledge."