Lenhoff, J.
The complaint in these proceedings, sounding in tort, was entered in the Hampden County Superior Court; and, pursuant to G.L.c. 231, § 102C was remanded to the Springfield Division of the District Court Department for trial.
Said complaint consists of eight (8) counts wherein the plaintiffs are Jesse Williams, his wife, Ella, and their five (5) children, Vanessa, Jennifer, Calvin, Jesse, Jr. and Shauna.
All claims set forth that the defendant corporation caused Jesse Williams to be arrested improperly thereby causing each to sustain damage.
Count I alleges that the defendant falsely imprisoned the plaintiff, Jesse Williams; Count II charges that such imprisonment resulted from the defendant’s negligence; and, Counts III through VIII state that each of the plaintiffs had resultant consequential damages by reason of their witnessing Jesse Williams’ arrest.
In the several aforementioned counts of the complaint, all complain that the defendant’s wrongful conduct caused each of them to suffer humiliation and mental stress with the plaintiff, Jesse Williams, as per Counts I and II, also suffering embarrassment.
In response to the plaintiffs’ complaint, the defendant answered denying the various counts and asserting affirmative defenses, as follows:- That no claim for which relief can be granted had been stated as the arrest was made by one under lawful authority in compliance with law; that the arrest was for contempt of court upon the court’s order; that claims for consequential damages are not causes of action recognized by law; and, that defendant did not act with malice. Further, that the plaintiff and his wife both acted negligently in failing to inform the sheriff or police officers at the time of the arrest that the debt had been paid, such negligence being equal or greater than the negligence, if any, of the defendant.
After trial, the Trial Court rendered its decision on each count of the complaint, as follows:
*249 Count I - for the defendant.
Count II - for the plaintiff, Jesse Williams, ^in ámoiint of $10,500.00. J
Counts III through VIII - for the defendant.
Since the Findings and Decision of the Trial Court appear-to contain all the pertinent evidence, same is deemed adequate and sufficient to enable bilr full consideration of the issues necessary to render a decision. Therefore, said Findings and Decision are now fully set forth:- ’ *>-i
FINDINGS AND DECISION
This action is brought by Jesse Williams, his wife, Ella Williams^ and their five children, to wit: Vanessa, Jennifer, Calvin, Jesse, Jr. and Shauna, against the defendant alleging that the latter, a Massachusetts corporation, caused said first named plaintiff to be improperly arrested and thereby damaged each plaintiff. There are eight counts in fhé complaint. The first two involve Jesse and the next six involve the wife and each child respectively. Only Mr. Williams’ first count charges false imprisonment. All the other counts allege negligence.
On or about September 20, 1976, Mr. Williams opened an account with the defendant, hereinafter sometimes referred to as City Coal, for heating oil to be delivered to the Williams home at 184 Westford Circle in Springfield. When around April 14,1977 an obligation of $70.41 was still outstanding, City Coal commenced a small claims action in Springfield District Court. A default judgment was entered in that action in favor of City Coal for a total of $81.89 on July 1, 1977. On November 3,1977 an application for Supplementary Process was filed in that court by the defendant herein appearing pro se. A summons in that proceedings was issued by the court on the following November 30th. It was mailed to Jesse Williams, and he signed a certified mail return receipt on December 3,1977. By the last mentioned summons, Mr. Williams was commanded to appear in the Springfield District Court on January 5, 1978 at 10:00 A.M.
When Mr. Williams did not appear pursuant to said summons, a capias for contempt for non-appearance was issued by the court on February 1, 1978. As the execution on the small claims judgment had been before this time, so also the aforesaid capias was delivered to Michael Fiorentino, a deputy sheriff of Hampden County. This delivery of the capias for contempt was made to the deputy on May 3,1978. The document was actually sent by City Coal’s bookkeeper to the Deputy Sheriffs’ Association at the County Hall of Justice with a request that it be given to Fiorentino. The latter was not an employee of the defendant herein. He was an independent contractor who was always paid a fee, not a salary. However, the capias for contempt was with the direction that it be used as appropriate.
On June 29,1978 Mrs. Ella Williams went to the offices of City Coal and paid the subject obligation in full. She received a receipt dated that date showing balance due “0” and with the words “Paid in Full” placed across the top. She never saw Deputy Fiorentino at that time and nevernotified him of her payment. Nor did any one for City Coal so notify him or so notify the District Court to the effect that payment had been made.
Between May 3,1978 and the evening of September 6,1978, Floren-tino visited the plaintiffs’ home, at that time at 84 Hazen Street in *250 Springfield, at least five times. Three of those times were after June 29th. He did not see Mr. Williams on any of these occasions. Each time he left his card with one of the children and told the child to tell Mr. Williams to call.
At about 6:15 A.M. on the morning of September?, 1978, armed with the capias for contempt and accompanied at first by two Springfield police officers who were then joined by two more officers who happened to be on the street foor an unrelated reason, Deputy Sheriff Fiorentino went to the Williams’ house. Two policemen rang the front door bell while the deputy and two others went to the back door. Hearing the door bell Mr. Williams; clad only in a towel because he was preparing to shower, answered the front door. The policeman asked for admittance, and when Mr. Williams stepped aside one of them went to the back door to let in Fiorentino and the other two patrolmen. By this time, an officer had told the plaintiff that he was under arrest. Mrs. Williams and the children came into the hall and living room. The youngest boy Jesse, Jr. became hysterical, and Mrs. Williams began to cry loudly. She was seriously upset. She told one of the policemen that the debt had been paid when she learned the reason for the arrest. This information did not come to the attention of the sheriff at that time. In fact, he was sent by the police out to his car.
Mrs. Williams forced all the children to return to their rooms. At one time, the towel around Mr. Williams fell off. He was allowed to go to his room and dress. At this time, he began to cry. This continued at least until he left the house. Then he was handcuffed and taken to the patrol car by the police. During the entire time Williams felt embarrassment, chagrin and shame. This was particularly intense while he was walked to the cruiser and made to enter the same because he and his family are black and because they are relatively new to the reputable, predominantly white, residential neighborhood. As Williams went to the car, he could see neighbors observing the exodus.
Although the deputy had told the officers to bring Mr. Williams to the jail at York Street, he was first taken to police headquarters. It was the booking officer who finally directed the patrolmen to take the plaintiff to York Street which they did. There they freed him of handcuffs and turned him over to Fiorentino. The officers left. As the sheriff and Mr. Williams were entering the jail, for the first time the deputy learned that Mr. Williams claimed to have paid the bill. The deputy turned Williams around and took him to the officers of the defendant in this case. The plaintiff sat in the car as the sheriff went into the defendant’s establishment. He learned that Mr. Williams was telling the truth. Therefore he returned to the automobile, acknowledged the error and offered to drive Williams home. On the way, the latter saw a relative and left the sheriff in favor of the relative.
When the plaintiff got home, he still felt emotionally drained. He went to work later in the day, but except to go to work, he kept to his house for at least a month. His younger son did not attend school on the day of the incident. Upon going to bed that evening, the boy showed signs of fear. The other children did attend school that day but were late because of their upset and the general disturbance caused by their father’s arrest.
I find that while the sheriff acted legally because he had a valid court *251 order directing him on September 7th, the defendant, acting through its agents, was negligent in that it did unreasonably omit to recover the capias for contempt from the sheriff after the underlying debt had been paid and return it to court at least to inform the court that the debt had been paid. There was a direct casual connection between that negligence, and the humiliation, embarrassment and damage suffered by the plaintiff, Jesse Williams, and by his family, the other plaintiffs. There was however no physical damage caused to either the said Jesse Williams or to his wife or to any of his children. Therefore the rule of Dziokonski v. Babineau, 375 Mass. 555 (1978), does not apply to the wife or children in this situation.
I further find however that the error made by the defendant in not recalling the capias for contempt was unintentional. Since an intentional act is a necessary element of a false imprisonment, there was no tort of false imprisonment.
Finally, I find that the plaintiff, Jesse Williams, was also negligent in that when his home was visited at least three times after payment of the debt in late June he did nothing to abate the deputy’s actions. Nor did he call the defendant’s place of business requesting that it recover the capias from the sheriff or inform the court of payment. Since the doctrine of comparative negligence applies to the negligence count, Jesse Williams is not foreclosed from recovery since his negligence was only 30%.
I find that his damages amount to $15,000.00. Apply the percentage aforesaid, his recovery is $10,500.00. Therefore, I find the following:
Count I - for the defendant, City Coal.
Count II - for the plaintiff, Jesse Williams in the amount of $10,500.00.
Count III - for the defendant, City Coal.
Count IV - for the defendant, City Coal.
Count V - for the defendant, City Coal.
Count VI - for the defendant, City Coal.
Count VII - for the defendant, City Coal.
Count VIII - for the defendant, City Coal.
At the close of the trial and before final arguments, the defendant submitted ten (10) requests for rulings of law. The said requests were disposed by the Trial Court’s allowing all except requests numbered two (2) and eight (8).
Seasonably and subsequently to the rendering of the Trial Court’s Findings and Decision, the defendant filed a Motion to Amend or Alter Judgment on Count II setting forth three (3) grounds, the first two only being material to this appeal. Said grounds are as follows:-
(1) The court found that the conduct of the defendant was merely negligent and not intentional, and that the plaintiff Jesse Williams suffered no physical damage as a result thereof but did suffer humiliation and embarrassment. Under the decision in Agis v. Howard Johnson Co., 371 Mass. 140 (1976), there can be no recovery for emotional distress (absent physical injury) unless the court finds, among other elements, that the defendant’s conduct was intentional or extreme and outrageous e.i. ‘so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community’. Wolfberg v. Hunter, 385 Mass. 390, 395-396 (1982).
*252 (2) The court found that the plaintiff, Jesse Williams, was negligent. The defense of contributory negligence was abolished only in certain actions, namely: actions for ‘.. .negligence resulting in death or in injury to person or property...’ (G.L. c. 231, § 85). (Emphasis added). The court found that Jesse Williams suffered no physical injury. Consequently, since the said plaintiff did not suffer injury to his person and was found to be contributorily negligent, judgment on Count II should be entered for the defendant.
The defendant also filed a Motion for a New Trial on Count II, the ground therefor being as follows:-
(1) The judgment entered on Count II is based on the following mistakes of law which injuriously affect substantial rights of the defendant.
(a) The judgment is based on a theory that in the absence of injury to his person plaintiff is entitled to recover for emotional distress where the defendant’s conduct is found not to be intentional or reckless and outrageous but. merely negligent.
(2) The damages awarded were excessive.
After the Trial Court heard both of the defendant’s motions, it denied the Motion for a New Trial and it disposed of the Motion to Amend or Alter Judgment on Count II by ruling thereon in the following language:-
On December 13, 1982 pursuant to the authorization from the Chief Administrative Justice of the Trial Court dated November 15,1982, the court heard counsel for all parties on this motion and on two other motions from the defendant and one motion from the plaintiff.
In order to insure that the Court’s findings answer the issues raised in Agis v. Howard Johnson Co. 371 Mass. 140 (1976) and in Payton v. Abbott Labs. 386 Mass. 540 (1982), the court makes this amendment to its original findings. The second full paragraph of page 4, beginning with the words: T find that while the sheriff...’ is hereby deleted and the following paragraph is substituted therefor:
T find that while the sheriff acted legally because he had a valid court order directing him on September 7th, the defendant, acting through its agents, was negligent and reckless in that it did unreasonably fail to recover the capias for contempt from the sheriff after the underlying debt had been paid, and return it to the court or at least to inform the court that the debt had been paid. I further find that the defendant should have known that its conduct was likely to cause the emotional distress suffered by plaintiff, that the failure to recall the capias was extreme and outrageous conduct, which caused the plaintiff s distress, and that the distress the plaintiff suffered was severe and of such a nature that no reasonable person could be expected to endure [Payton v. Abbott Labs., 386 Mass. 540, 554-555.] There was however no physical injury caused to said Jesse Williams or to his wife or to any of his children. Therefore the rule of Dzionkonski v. Babineau, 375 Mass. 555 (1978), does not apply to the wife or children in this situation, nor is the zone of danger issued applicable here. Payton, supra at 550-552.
The defendant claims to be aggrieved by (1) the denial of its requests numbered two (2) and eight (8); (2) the finding and judgment that it contends is inconsistent with the allowance of all the other requests; (3) the Trial Court’s ruling resulting from the filing of the Motion to Amend or Alter Judgment on Count II claiming same is not supported by evidence and, hence, incorrect as a *253 matter of law; and, (4) the Trial Court’s denial of its Motion for a New Trial.
The Appellate Division considers this appeal in order to render a decision according to the justice of the case. G.L.c. 231, § 110. In doing so, our attention is focused on the defendant’s grievance that the evidence does not support the Trial Court’s judgment for the plaintiff on Count II of his complaint or that said judgment is erroneous as a matter of law. The reason for first fixing our sights on this particular grievance is that same appears to be pivotal and controlling in nature, the resolution of which, if favorable to the defendant, is decisive of the instant appeal rendering the other grievances inconsequential.
In reviewing the findings of a T rial Court, an Appellate Court may not reverse unless the facts on which a conclusion was based are clearly erroneous or unless the findings or conclusions are tainted by an error of law. Davidson Pipe Supply Co., Inc. v. Johnson, 14 Mass. App. Ct. 518, 525 (1982); Soutier v. Kaplow, 330 Mass. 448, 450 (1953).
In these proceedings, our concern is confined to discovering whether the Trial Court’s findings or conclusions are tainted by an error of law; and, we are cognizant that the facts as found remain fixed and conclusive so long as there is credible evidence to support them. Glazier v. Andrews, 349 Mass. 417 (1965).
The filing of the Motions to Amend or Alter Judgment on Count II and for a New Trial on Count II, having been timely filed, enabled the Trial Court to make additional findings. Dist./Mun. Cts. R. Civ. P., Rule 59 (a). In fact, “ajudge has a right and even a duty to change his mind about facts or the law when there is no bar in law to his doing so and he is convinced that his view of either is erroneous”. See Nagle v. Regan, Mass. App. Ct. Adv. Sh. (1981) 2187, 2193; Sheriff v. Gillow, 320 Mass. 46, 49 (1946). Therefore, the Trial Court, in amending its findings and conclusions previously made, did possess the right power and authority to do so. However, as indicated hereinbefore, the conclusions, wmhether made originally or established subsequently by amendment, stand unless tainted by error of law.
In the case at bar, the Trial Court at first only found that the defendant’s negligence “in that it did unreasonably omit to recover the capias for contempt from the sheriffs” directly caused humiliation, embarrassment and damage suffered by the plaintiff, Jesse Williams. It also further found that said plaintiff had no physical damage resulting from the negligence so found.
This Commonwealth clearly now holds the view that emotional distress without physical injury is not compensable. In Payton v. Abbott Labs, 386 Mass. 540, 547 (1982), the Court said:-
Although this court has allowed recovery for emotional distress absent physical harm, it has done so only where the defendant’s conduct was extreme and outrageous, and was either intentional or reckless. See Simon v. Solomon, 385 Mass. 91, 95 (1982); Agis v. Howard Johnson Co., 371 Mass. 140 (1976); George v. Jordan Marsh Co., 359 Mass. 244 (1971). The outrageous and reckless or intentional nature of the defendant’s conduct permits a jury to infer that the plaintiff suffered genuine emotional distress. In the absence of these indicia of genuineness, we require that the plaintiffs alleging negligent infliction or emotional distress substantiate their claims by demonstrating, in order to recover, that they suffered physical harm.
Based on the foregoing, the Trial Court’s judgment relative to Count II, as it is drafted, must be regarded as erroneous as a matter of law. However, the amending of the findings and conclusions by the Trial Court to now hold the defendant was “negligent” and that its conduct in failing to recover the out *254 standing capias was “reckless, extreme and outrageous” for it should have known that such conduct would cause the plaintiff to suffer severe emotion distress of such nature that no reasonable person could be expected to endure, poses a new and additional problem for our consideration and resolution.
Apparently, the Trial Court was of the opinion that the evidence adduced and produced at trial was complete and sufficient to enable the making of the amended findings without reopening the case for additional evidence. The Trial Court must have believed that the issue of reckless, extreme and outrageous conduct was tried by the implied consent of the parties notwithstanding the fact that this particular tort was not set forth and included in the pleadings. Although the Trial Court did not request the filing of an amendment to the complaint accordingly, it could have done so as per Dist./Mun. Cts. R. Civ. P., Rule 15 (b). Because the Trial Court could have so requested said amendment, we take the liberty of treating this matter in the same manner had such action occurred with the plaintiffs full compliance therewith.
We of the Appellate Division are now postured to determine whether the Trial Court’s finding of reckless, extreme and outrageous conduct is warranted as a matter of law on the facts here presented.
The leading case to assist in our eventual determination is Payton v. Abbott Labs, supra. We note with extreme interest the language that appears on page 547 of said decision which reads, as follows:-
It should be noted, in addition, that the retributive function of imposing tort liability is served by allowing recovery for emotional distress without proof of physical harm, when a defendant’s conduct was either intentional or reckless. Where a defendant was only negligent, his fault is not so great as to require him to compensate the plaintiff for a purely mental disturbance.
And, at page 555 of said Payton v. Abbott Labs, supra, we find the four elements of proof required to recover for emotional distress without physical injury. They are (1) that the defendant intended to inflict emotional distress, or knew or should have known that emotional distress was the likely result of his conduct; (2) that the defendant’s conduct was extreme and outrageous, beyond all bounds of decency, and utterly intolerable in a civilized community; (3) that the actions of the defendant were the cause of the plaintiffs distress; and (4) that the emotional distress suffered by the plaintiff was so severe and of such nature that no reasonable person could be expected to endure it.
A comprehensive analysis of the word “reckless” to make known its meaning and legal significance is most helpful. RESTATEMENT (SECOND) OFTORTS § 500;[2] “In Comment” to said § 500 at pages 587, 588;[3] and PROSSER, LAW OF TORTS (4th ed., 1971) at page 185[4] provide said analysis.
*255 In the case of Sheehan v. Goriansky, 321 Mass. 200 (1947), the Supreme Judicial Court pointed out that wanton or reckless conduct resulting in an injury has been held to be “the legal equivalent of intentional conduct” in both criminal prosecutions and in civil actions. Comm. v. Welansky, 316 Mass. 383, 401 (1944); Banks v. Braman, 188 Mass. 367, 369 (1905). Nevertheless, at page 203 of Sheehan v. Goriansky, supra, the Court sets forth that while wanton or reckless conduct is the legal equivalent to intentional conduct, it is substantially different and differs in a very important particular. The Court points out that while an act to be reckless must be intended by the actor, the actor does not have to intend the harm which results from it. It is enough that he realizes or, from the facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless.
Lastly, “reckless conduct” is different than and not synonymous with “negligent conduct”.
In Sabatinelli v. Butler, 363 Mass. 565 (1973), at pages 567 and 568, the Court said:-
Under the law of the Commonwealth, the difference between intentional and negligent conduct is a difference in kind and not in degree. If conduct is negligent, it cannot also be intentional. Similarly, a finding of intentional conduct precludes a finding that the same conduct was negligent; the words “wanton” and “reckless” are thus not merely rhertorical or vituperative expressions used instead of negligent or grossly negligent. They express a difference in the degree of risk and in the voluntary taking of risk so marked, as compared with negligence, as to amount substantially and in the eyes of the law to a difference in kind.
The differentiation of “negligent” and “reckless” conduct stated by the Supreme Judicial Court in Sheehan v. Goriansky, supra, was restated and reaffirmed in Payton v. Abbott Labs, supra, in the following language previously quoted herein that is now repeated; namely, “-Where a defendant was only negligent, his fault is not so great as to require him to compensate the plaintiff for a purely mental disturbance.”
In orderto comprehend completely, the application of “reckless” conduct to the facts of this case, we add to our review the cases of Simon v. Solomon, 385 Mass. 91, 97 (1982) and Boyle v. Wenk, 378 Mass. 592 (1979), both cases demonstrating conduct that was held to be extreme and outrageous where there was a pattern of repeated conduct of indifference present resulting in emotional distress. Also added thereto is the case of Wolfberg v. Hunter, 385 Mass. 390 (1982) where the Supreme Judicial Court held that an infestation of mice in housing accommodations was not reckless under the “knew or should have known” standard enunciated in Agis v. Howard Johnson Co., 371 Mass. 140, 144-145 (1976) and that the evidence supported the judge’s findings accordingly. This is here mentioned as the combination of “reckless” conduct must contain therein the elements of being extreme and outrageous. We also mention the case of Beecy v. Pucciarelli, 387 Mass. 589 (1982) where the Court held that an action brought by an attorney in error, could not be characterized as conduct that was extreme and outrageous beyond all possible bounds of decency.
We do recognize that in the facts here before us, we do confront a most *256 bothersome aspect. The Trial Court concluded that the negligent act was simultaneously reckless conduct of an extreme and outrageous nature resulting in foreseeable emotional distress. It might well be that the Trial Court forged what can be construed as new, enlightened law by reason of the special facts encountered. We know that individuals possess a fundamental right to personal liberty without unlawful interference; and, a civil arrest, being penal in nature, is and should be regarded as drastic action. Consequently, in the light of said special facts, the Trial Court considered the defendant’s error in not recalling the capias as also being abnormal conduct creating an unreasonable risk flowing from said error. However, the state of the law as it now exists does not permit the Trial Court to find that the error justifying the conclusion that the defendant was negligent likewise is the basis of reckless conduct that is extreme and outrageous. Payton v. Abbott Labs, supra, and Sabatinelli v. Butler, supra.
Research has revealed that the bringing and prosecution of supplementary proceedings after the debtor has paid the creditor in an attempt to be paid again would constitute abuse of legal process. This action could be the basis of making the instigator of a groundless action liable for damages. Lorusso v. Bloom, 321 Mass. 910 (1947). To constitute a cause of action for abuse of process, it must appear that the process was used to accomplish some ulterior purpose other than for what the process was designed and intended. Quaranto v. Silverman, 345 Mass. 423, 426 (1963). The instant case before us, in like manner, emanates from the prosecution of supplementary proceedings as the capias for contempt was issued by the Trial Court after the plaintiff was summoned to appear for examination. The defendant argues that the Trial Court issued the capias; hence, the defendant is not and cannot be responsible for the arrest of the plaintiff. This contention is without merit for the defendant initiated the various steps resulting in the issuance of the capias by the Trial Court. Therefore, the said defendant must shoulder responsibility for what has transpired. Regardless of the defendant’s initiating action aforestated, there are no facts to indicate or show that defendant, in pursuance of any ulterior purpose, used the outstanding capias to accomplish a desired result. In other words, the disclosed facts would not sustain an abuse of process action.
The Trial Court found that the defendant ‘ ‘ should have known that his conduct was likely to cause emotional distress suffered by the plaintiff.” It also concluded that the defendant was negligent and stated “I further find however that the error made by the defendant in not recalling the capias for contempt was not intentional”. We hold the belief that an “error” found is not and cannot be considered “reckless”. It is and was as the Trial Court correctly concluded, negligence. Although it is true that one who initiates procedures to collect a debt does have the duty to terminate the proceedings relative thereto and should recall any outstanding capias when same is no longer required or necessary, one could reasonably beliaeve that if through inadvertence, oversight or error there is an attempt to wrongfully enforce same, the debtor would immediately and forthwith protest and disclose the actual facts to avert and avoid untoward consequences and probable damages. See Quaranto v. Silverman, 345 Mass. 423, 428 (1963). In fact, the eventual disclosure of payment did result in immediate inquiry with immediate rectification of the action resulting from the discovered error. In such circumstances, one cannot be deemed reckless, as a matter of law, there being no other inculpating evidence.
In passing, had the finding or conclusion of reckless conduct been upheld, it appears that comparative negligence would not be applicable. We state the foregoing because prior to the present comparative negligent statute, G.L.c. *257 231, § 85, contributory negligence in such cases was no defense. See Pridgen v. Boston Housing Authority, 364 Mass. 696, 705 (1914); Baines v. Collins, 310 Mass. 523, 526 (1946).
To conclude, we find prejudicial error. The judgment entered as to Count II of the complaint is vacated and the followingjudgment is to be entered. As to Count II, judgment for the defendant.

 “The actor’s conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.”

 “(a) Types of reckless conduct. Recklessness may consist of either of two different types of conduct. In one, the actor knows, or has reason to know-of facts which create a high degree of risk of physical harm to another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to that risk. In the other, the actor has such knowledge, or reason to know of the facts, but does not realize Or appreciate the high degree of risk involved, although a reasonable man in his position would do so.
An objective standard is applied to him, and he is held to the realization of the aggravated risk which a reasonable man in his place would have, although he does not himself have it.”

 “The usual meaning assigned to ‘wilful’, ‘wanton’ or ‘reckless’ according to taste as to the word used, is that the actor has intentionally done an act of an unreasonable character in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it *255 highly probable that harm would follow. It usually is accompanied by a conscious indifference to consequences amounting almost to willingness that they shall follow, and it has been said that this is indispensable.”