Holtz, Nancy Staffer, J.
Introduction
This action arises from a lawsuit brought by the Estate of Kenneth Waters (“Waters”) against the Town of Ayer, its police department, and others (collectively, the “Town”), for the allegedly wrongful arrest, prosecution, conviction and incarceration of Waters for the murder of Katherina Brow. After serving 19 years in jail, Waters was exonerated and released. He died six months later. His sister, Betty Anne Waters, as Ad-ministratrix of his Estate (“Administratrix”), initiated the underlying civil rights action against the Town. [1] She ultimately obtained a judgment of approximately $11 million, of which, approximately $3 million has been paid by the Town’s other insurers.
The Administratrix, as assignee of the Town, and the Town, as a third-party plaintiff (collectively the “Plaintiffs”), now bring this action seeking to establish that the defendant, Western World Insurance Co. (“Western World”), is bound by its insurance contracts with the Town to provide coverage for Waters’ underlying claim, thereby obligating Western World to pay the remainder of the judgment against the Town. Specifically, the Plaintiffs claim: (1) breach of the duly to defend the insured in connection with the Waters lawsuit; (2) breach of the duiy to indemnify the insured in connection with the Waters lawsuit; and (3) breach of the duty of good faith and fair dealing in violation of G.L.c. 93A and 176D.
The matter is before the court on cross motions for summary judgment. As set forth below, the Plaintiffs’ motion is denied and Western World’s motion is allowed because (1) the insurance contract only covers damages from negligent acts; (2) the insurance contract contains a specific exclusion for damages arising out of willful violations of penal statutes; and (3) although it is unsettled in Massachusetts, it is unlikely that the alleged suppression of evidence constituted a continuing trigger of coverage.
Background
I. Waters’ Underlying Claim Against the Town
The essence of Waters’ claims against the Town is that the Town police ignored clear evidence of his innocence, coerced witnesses into implicating him for Brow’s murder, misled a grand jury and a prosecutor, and withheld evidence showing that Waters was not at the scene of the crime, all leading to his indictment in November 1982, conviction in 1983, and incarceration until 2001. Joint App., Ex. 8; Joint App., Ex. 34. Waters engaged in repeated efforts from 1983 through 1985, 1987 and 1995 to obtain post-conviction relief through motions and appeals. Joint App., Ex. 8, pp. 14-16. The Town thwarted Waters’ efforts by failing to provide the investigative materials requested by Waters’ attorney and investigator. Joint App., Ex. 8, pp. 14-16. In particular, the Town withheld police files, logs and correspondence regarding fingerprint evidence and alibi witnesses that tended to exonerate Waters. Joint App., Ex. 8, pp. 14-16.
*50 In 2000, through the Innocence Project, Waters obtained the agreement of the Middlesex County District Attorney to test the blood evidence at the scene. Joint App., Ex. 8, p. 19. The results revealed that Waters could not have been the source of the blood. Joint App., Ex. 8, p. 16. On March 15, 2001, Waters’ convictions were vacated and he was released from prison. Joint App., Ex. 8, p. 19. Six months later, Waters died in an accident. Joint App., Ex. 8, p. 20.
The Administratrix brought suit against the Town, the Town’s police department and other defendants, claiming that they had violated Waters’ civil rights by their actions. Joint App., Ex. 8, p. 21. Although the Town’s other insurers accepted defense of the lawsuit, Western World denied coverage. Joint App., Ex. 10. The United States District Court for the District of Massachusetts issued a judgment of damages totaling $10,729,000, of which $3,173,250 has been paid by other insurers to Waters’ estate. Joint App., Ex. 10, Joint App., Ex. 11. The Administratrix, as assignee for the Town, and the Town, as a third-party plaintiff, brought suit against Western World seeking coverage for the remainder. Joint App., Ex. 12, p. 1.
II. The Town’s Insurance Contracts with Western World
Western World issued six consecutive Law Enforcement Officers Liability policies to the Town. Joint App., Ex. 16-21. Those policies were effective from July 26, 1985 to July 26, 1991. Joint App., Ex. 16-21. The insuring agreements of each policy, which define the scope of coverage, are identical[2] and provide, in relevant part, as follows:
I. COVERAGE
The Company will pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of negligent acts, errors, or omissions of the Insured as follows:
Coverage A — Personal Injuiy
Coverage B — Bodily Injuiy
Coverage C — Property Damage
to which this policy applies, and the Company shall [sic] the right and duly to defend any suit against the Insured seeking damages on account of such personal injuiy, bodily injuiy or property damage even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient but the Company shall not be obligated to pay any claim or judgment or defend any suit after the applicable limit of the Company’s liability has been exhausted by payment of judgments or settlements.
Joint App., Ex. 16-21. The policies also contain a specific exclusion for intentional acts which states:
This coverage part does not apply:
... (b) to damages arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured, or claims or injury arising out of acts of fraud committed by or at the direction of the Insured.
Joint App., Ex. 16-21.
DISCUSSION
Summaiy judgment shall be granted where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of affirmatively demonstrating both the absence of a triable issue and that the summaiy judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Commc’ns. Corp., 410 Mass. 805, 809 (1991).
Interpretation of policy language is a question of law for the court to decide. Cody v. Conn. Gen. Life Ins. Co., 387 Mass. 142, 146 (1982); Save-Mor Supermarkets, Inc. v. Skelly Detective Serv., 359 Mass. 221, 226 (1971). The court must “construe the words of the policy in their usual and ordinary sense.” Liquor Liab. Joint Underwriters Assoc. v. Hermitage, 419 Mass. 316, 320 (1995); Barnstable Cnty. Mut. Fire Ins. Co. v. Lally, 374 Mass. 602, 605 (1978). If in doubt, a court will “consider what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.” A.W. Chesterton Co. v. Mass. Insurers Insolvency Fund, 445 Mass. 502, 518 (2005).
A third-party action falls within coverage, and therefore within a insurer’s duty to defend, when the allegations of the complaint are “ ‘reasonably susceptible’ of an interpretation that they state or adumbrate a claim covered by the policy terms.” Sterilite Corp. v. Continental Cas. Co., 17 Mass.App.Ct. 316, 318 (1983).A claim will be covered if, during the policy period, an occurrence of damage as defined in the policy triggers the insurer’s duty. See Rubenstein v. Royal Ins. Co., 44 Mass.App.Ct. 842, 851 (1998). To terminate its duty, the insurer must “demonstrate!] with conclusive effect. . . that as a matter of fact — as distinguished from the appearances of the complaint and policy — the third party cannot establish a claim within the insurance.” Sterilite Corp., 17 Mass.App.Ct. at 323. Likewise, the insurer bears the burden of proving that an exclusion applies to avoid coverage. Ratner v. Canadian Univ. Ins. Co., 359 Mass. 375, 381 (1971).
In this case, Western World had three independent bases for denying coverage. First, the coverage agreements are limited by the contracts’ terms to “damages because of negligent acts, errors or omissions.” There *51 fore, coverage is not required where, as here, the Administratrix’s claims against the Town are based on the alleged intentional actions of the Town police. Second, the coverage agreements specifically exclude “damages arising out of the willful violation of a penal statute or ordinance.” Because the Town’s alleged actions in coercing inculpatory testimony and withholding exculpatory evidence may be deemed crimes against public justice under G.L.c. 268, they are excluded from coverage. Finally, the policies only cover damages from actions and omissions which occurred during the policy periods, but not those which occurred before the inception of insurance coverage. Although Massachusetts law is not clear, it would not appear that the post-conviction conduct constituted a continuous trigger of coverage, because damages arising from the underlying suit were evident before the inception of coverage. In the absence of coverage, Western World had no duty to defend or indemnify the Town. Because Western World’s denial of coverage was within the terms of the insurance policies, there is no violation of G.L.c. 93A or G.L.c. 176D as a matter of law.
A. Scope of Coverage Limited to Negligent Acts
Under the terms of the six policies, Western World was obligated to defend and indemnify the Town and its police department for personal injury and bodily injury “because of negligent acts, errors, or omissions” that were committed or alleged to have been committed within the jurisdiction and during the policy period of the insured. Joint App., Ex. 16-21 (emphasis added). An insurance policy for negligent acts will not obligate an insurer to defend ágainst claims when the injury which is a basis for the suit is a but-for result of an intentional act. See, e.g., Bagley, 430 Mass. at 456; United Nat’l Ins. Co. v. Parish, 48 Mass.App.Ct. 67, 68 (1999). “(N)egligence and willful and wanton conduct are so different in kind that words properly descriptive of the one commonly exclude the other.” Sabatinelli v. Butler, 363 Mass. 565, 567-68 (1973).
For example, in Worcester Insurance Co. v. Fells Acre Day School, the court held that the insurance policy language which limited coverage to “accidents” — defined to mean that the insured did not specifically intend to cause the resulting harm — precluded coverage for claims of damages because of sexual molestation and rape. 408 Mass. 393, 399 (1990). In that case, the court concluded that the negligence claims were unsupportable to the extent that the plaintiffs sought to recover in negligence from the same individuals from which they sued in assault and battery, and for the same underlying acts. 408 Mass. at 410.
In this case, but for the intentional violations of Waters’ constitutional rights, there would have been no damages. In her second amended complaint, the Administratrix alleges that the injustices against Waters were caused by the “unlawful, intentional, willful, purposeful, deliberately or recklessly indifferent, reckless, bad-faith and/or malicious acts, misdeeds and omissions.” Joint App., Ex. 8, p. 34. There is no dispute that Waters’ imprisonment and the violations of his civil rights were a direct result of perjured and coerced testimony, deliberately suppressed evidence, and fabricated inculpatory evidence.
The Administratrix argues that Limone v. United States establishes a claim in negligence for post-conviction misconduct. See Limone v. United States, 497 F.Sup.2d 143, 229-30 (D.Mass. 2007). However, Massachusetts, in fact, has specifically rejected the proposition that violations resulting from deliberate and intentional conduct can be considered as evidence of negligence. Sabatinelli, 363 Mass. at 567. Very plainly, “if conduct is negligent it cannot also be intentional.” Sabatinelli, 363 Mass. at 567. Accordingly, the policy provision, which requires negligent acts, has not been triggered.
B. The Exclusion for Willful Violations of Penal Statute
Additionally, Western World is not obligated to defend the Town because the coverage agreements all contain a specific exclusion which provides that coverage does not apply “to damages arising out of the willful violation of a penal statute or ordinance.” Joint App., Ex. 16-21. “Words in exclusionary clauses of insurance contracts should be construed ‘in their usual and ordinary sense.’ ” Bagley, 430 Mass, at 457, quoting Liquor Liab. Joint Underwriting Ass’n of Mass. v. Hermitage Ins. Co., 419 Mass 326, 320 (1995).
“The word penal connotes some form of punishment imposed on an individual by the authority of the state. Where the primary purpose of a statute is expressly enforceable by fine, imprisonment or similar punishment the statute is always construed as penal.” Black’s Law Dictionary 1153 (7th ed. 1999), quoting 3 Norman J. Singer, Sutherland Statutes and Statutory Construction §59.01, at 1 (4th ed. 1986). Furthermore, in insurance exclusionary provisions, the phrase “arising out of’ is read expansively. Bagley v. Monticello Ins. Co., 430 Mass. 454, 457 (1999). “ ‘[A]rising out of ... is considered synonymous with ‘originate’ or ‘come into being.’ ” New England Mut. Life Ins. Co., 40 Mass.App.Ct. at 726-27. The causation is analogous to “but for” causation, and in examining the exclusion the court inquires “whether there would have been personal injuries, and a basis for the plaintiffs suit, in the absence of the objectionable underlying conduct.” Bagley, 430 Mass. at 457. See Rischitelli v. Safety Ins. Co., 423 Mass. 703, 704 (1996).
In this case, assuming as true the acts alleged in the underlying complaint, it appears that the alleged acts and omissions of the Town police can only reasonably be construed as crimes against public justice, including, perjury, G.L.c. 268, §1;[3] subornation of perjury, G.L.c. 268, §3;[4] intimidation of witnesses, *52 G.L.c. 268, §13B;[5] and tampering with evidence, G.L.c. 268, §13E.[6] Fairly reading the complaint, Waters’ damages originated from, and therefore “arose out of,” those willful violations of penal statutes. Waters’ imprisonment and conviction were but-for results of the alleged Town actions.
Denying coverage under this exclusionary provision is consistent with the treatment of coverage under exclusionary provisions in other cases. For example in Bagley, the Supreme Judicial Court held that an illegal acts exclusion precluded coverage of all claims arising from rape, even though some of the claims were brought under a negligence theory. See Bagley, 430 Mass. at 457. Although the plaintiff, in that case, alleged an action in negligence for failure to provide reasonable security, the court concluded that because her injuries were a but-for result of the rape, they were precluded by the terms of the policy. Bagley, 430 Mass. at 458. Similarly, in United National Insurance Co., the court concluded that the policy exclusion precluded coverage in a negligence action which originated from an assault and battery. 48 Mass.App.Ct. at 70. Because the injuries originated from the assault, and the exclusion precluded coverage for suits “arising out of assault and/or battery,” there could be no coverage under the policy since “without the underlying assault and battery, there would have been no personal injuries and, therefore, no basis for a suit against the insured for negligence.” United Nat’l Ins. Co., 48 Mass.App.Ct. at 70, 72. See also New England Life Ins. Co. v. Liberty Mutual Ins. Co., 40 Mass.App.Ct. 722, 724 (1996).
Contrary to the Plaintiffs’ arguments, the fact that the claims against the town in the underlying action were phrased as civil rights violations, rather than criminal acts, does not alter this result. Nothing in the exclusion’s language limits it to specific allegations in the complaint. Based on the plain language of the exclusion, it is sufficient that the alleged acts themselves, if proven true, would constitute a violation of a criminal statute. Accordingly, the exclusionary provision applies.
C. The Policy Periods
Finally, Western World does not have a duty to defend the insured against damages because the alleged actions that gave rise to Waters’ damages occurred in 1983, two years before the first policy’s inception. Therefore, they did not trigger coverage. See Billings v. Commerce Ins. Co., 458 Mass. 194, 196-97 (2010). “ Trigger of coverage’ is a term of art whereby the court describes what must occur during the policy period for potential coverage to commence under the specific terms of an insurance policy.” A. W. Chesterton Co., 445 Mass. at 518, quoting Rubenstein, 44 Mass.App.Ct. at 850 n.6. “The time of the ‘occurrence’ under an indemnity policy ‘is not the time the wrongful act was committed, but the time when the complaining party was actually damaged.’ ” Billings, 458 Mass. at 198, quoting Continental Cas. Co. v. Gilbane Bldg. Co., 391 Mass. 143, 152 (1984).
It is true that it is not well settled in Massachusetts whether the failure to disclose exculpatory evidence constitutes a continuing trigger of coverage. In Billings, the court held that the defendant-insurer had no obligation to defend the plaintiff in an action for malicious prosecution when the underlying claim was filed two years before the inception of coverage. Billings, 458 Mass. at 198-200. The Court specifically rejected that malicious prosecution could be considered a continuing tort for the duration of the underlying litigation. Billings, 458 Mass. at 199. Likewise, in Sarsjield u. Great American, the District Court in denying coverage concluded that concealment of evidence leading to a false imprisonment did not constitute a “continuing trigger,” and that the continuing trigger theory is ill-suited to insurance coverage cases where “injury was evident from the outset and first occurred prior to the inception of insurance coverage.” Sarsfield, 2008 WL 8587054, at *5 (D.Mass. June 3, 2008). The court stated that it would be “unreasonable for the Ciiy to expect the . . . policy to cover liability for tortious acts committed before its inception.” 2008 WL 8587054, at *12.
Yet, unlike in this case, in Billings, the insured had taken no action after the inception of the policy, and therefore the court did not evaluate whether a continuing trigger of coverage would apply. Also unlike this case, in Sarsjield, trie Court of Appeals affirmed the judgment on the ground that neither the city, nor the employees had committed a wrongful act during the policy period, since the only concealment had been from the prosecutor. Sarsfield v. Great American, 335 Fed.App’x 63, 67-68 (2009). Accordingly, even though the insurance policy did not begin until almost three years after the filing of the underlying suit, it is unclear whether Massachusetts would recognize a continuing trigger of coverage for the post-conviction actions or omissions.
In this case, Waters suffered actual damages at the filing of the underlying suit, two years before the inception of the first policy. See id. The initial investigation of the Brow murder occurred in 1980. Waters was re-arrested and indicted in 1982. In 1983, Waters was sentenced to life in prison. The six policies issued by Western World and held by Ayer were effective from 1985 to 1991. During the policy years, Waters sought post-conviction relief through appeals. Nonetheless, the court does not reach the issue of whether the conduct in this case constitutes a continuing trigger of coverage, because coverage is denied on two other independent bases, already discussed.
In summaiy, Western World properly denied coverage because (1) the coverage agreements were limited by the contracts’ terms to “damages because of negligent acts, errors or omissions”; (2) the coverage agreements specifically excluded “damages arising out of *53 the willful violation of a penal statute or ordinance”; and (3) the actions and omissions causing damages in this case occurred before the inception of insurance coverage. In the absence of coverage, Western World had no duty to defend the Town. “If an insurer has no duty to defend, based on the allegations in the plaintiffs complaint, it necessarily follows that the insurer does not have a duty to indemnify.” Bagley, 430 Mass. at 459, citing United Nat’l Ins. Co., 48 Mass.App.Ct. at 70-71.
“Where an insurer’s denial of coverage is correct, there can be no violation of G.L.c. 93A or c. 176D[.]” Spurlin v. Merchants Ins. Co. of N.H., 866 F.Sup. 57, 62 (D.Mass. 1994). See Falmouth Nat. Bank v. Ticor Title Ins. Co., 920 F.2d 1058, 1065 (1st Cir. 1990). An insurer’s refusal to defend its insured does not support a claim for unfair or deceptive acts or practices when the insurer reasonably could have concluded that the claims were not within the scope of coverage. Polaroid Corp. v. Travelers Indemnity Co., 414 Mass. 747, 753-54 (1993). Western World’s denial of coverage was legally correct.
ORDER
It is ORDERED THAT the Defendant’s cross motion for summary judgment is GRANTED, and the Plaintiffs’ cross motion for partial summaiy judgment is DENIED.

 In the underlying case, the Plaintiff asserted the following: (1) Fourteenth Amendment Due Process claims under 42 U.S.C. §1983 for failure to disclose material exculpatory evidence and Impeachment evidence, and fabrication of in-culpatory evidence (Count I); (2) First and Fourteenth Amendment Rights of Access to Courts and Executive Clemency claims under §1983 for violation of affirmative obligation to come forward post-conviction (Count II); (3) Fourth Amendment claim under §1983 for malicious prosecution and Franks v. Delaware claim (Count III); (4) supervisory liability claim under §1983 as to Officer Philip Connors only (Count IV); (5) Monell claim under §1983 for unconstitutional customs, policies or practices as to the Town of Ayer only (CountV); (6) Monell claim under §1983 for unconstitutional and inadequate training and supervision as to the Town of Ayer only (Count VI); (7) claim under G.L.c. 12, §111 for violating Massachusetts law and constitution (Count VII); and (8) malicious prosecution claim (Count VIII).

The only substantive differences between the six policies relate to the definitions of “bodily injury” and “personal injury.” Joint App., Ex. 16-21. To the extent that there are differences, they do not affect this analysis.

“[W]hoever, being required by law to take an oath or affirmation, willfully swears or affirms falsely in a matter relative to which such oath or affirmation is required, shall be guilty of perjury. Whoever commits perjury . . . shall be punished by imprisonment in the state prison for not more than twenty years or by a fine of not more than one thousand dollars . . .” “Whoever is guilty of subornation of perjury, by procuring another person to commit perjury, shall be punished as for perjury.”

,Whoever is guilty of subornation of perjury, by procuring another person to commit perjury, shall be punished as for perjury.”

“Whoever, directly or indirectly, willfully (a) threatens, or attempts or causes physical injury, emotional injury, economic injury or property damage to ... (i) a witness or potential witness . . . shall be punished by imprisonment for not more than ... 10 years in a state prison, or by a fine of not less than $1,000 nor more than $5,000.”

“Whoever alters, destroys, mutilates, or conceals a record, document, or other object. . . with the intent to impair the record, document or object’s integrity or availability for use in an official proceeding . . . shall be punished . . . (ii) if the official proceeding involves a violation of a criminal statute, by a fine of not more than $25,000, or by imprisonment in the state prison for not more than 10 years, or in a jail or house of correction for not more than 2 1/2 years, or both."