JOSEPH ANDRADE *vs.* ROBIN LYNN BAPTISTE.

Bristol. December 3, 1991. - January 8, 1992.

Present: LIACOS, C J., WILKINS, ABRAMS, & GREANEY, JJ.

*Actionable Tort. Negligence,* Intentional conduct, Duty to prevent harm.

In a negligence action arising from the defendant's husband's having shot
the plaintiff with an assault rifle, the judge correctly allowed the de-
fendant's motion for summary judgment where the plaintiff did not
demonstrate that the defendant owed him any duty of reasonable care,
within the meaning of Restatement (Second) of Torts § 318 or § 308
(1985), or under existing societal customs and values, to control her
husband's behavior or to protect others from his conduct. [562-565]

CIVIL ACTION commenced in the Superior Court Depart-
ment on October 13, 1989.

The case was heard by *William H. Carey,* J., on a motion
for summary judgment.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*James Fogarty (Richard E. Burke, Jr.,* with him) for the
plaintiff.

*Carol A. Griffin* for the defendant.

GREANEY, J. By his complaint in the Superior Court, the
plaintiff, Joseph Andrade, sought to recover damages based
on the alleged negligence of the defendant, Robin Lynn Bap-
tiste, in failing to prevent her husband, Robert Baptiste, from
shooting the plaintiff with an assault rifle. A judge in the
Superior Court allowed the defendant's motion for summary
judgment pursuant to Mass. R. Civ. P. 56 (c), 365 Mass.
824 (1974), and a judgment entered dismissing the com-
plaint. The plaintiff appealed, and we transferred the case to
this court on our own motion. We affirm the judgment.

In passing upon the defendant's motion for summary judgment, the judge properly assumed that all the facts favorable to the plaintiff were to be taken as true, and that the plaintiff was to have the benefit of any favorable inferences. See *Coveney* v. *President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 17 (1983). In ascertaining those facts, however, the judge correctly considered only "such facts as would be admissible in evidence." Mass. R. Civ. P. 56 (e), 365 Mass. 824 (1974). See *Madsen* v. *Erwin*, 395 Mass. 715, 719 (1985). Under these standards, the summary judgment record discloses the following.

On September 17, 1988, at approximately 10 P.M., the plaintiff was working at Mark's Beverage, a business located at the corner of County and Smith Streets in New Bedford. The plaintiff was told that there was a disturbance going on outside the store and that another store employee was attempting to resolve the problem. The plaintiff left the store, and noticed the defendant's husband, Robert Baptiste (Baptiste), entering the house at 35 Smith Street that he and the defendant occupied as their marital home. As the plaintiff began to return to the store, he heard a series of "popping sounds." The plaintiff turned and saw Baptiste, who, according to the defendant, had consumed nine cans of beer that day, in front of his residence repeatedly firing a rifle. The rifle was a two and one-half foot long Japanese AKA 752 assault rifle with a "banana clip" of ammunition attached to it.[1] Baptiste fired approximately twenty shots. The plaintiff was shot and seriously injured.[2]

The defendant was the sole owner of the residence at 35 Smith Street. Baptiste had purchased the assault rifle approximately one year prior to the incident. He stored the weapon in the living room closet, sometimes loaded with ammunition. Baptiste also stored ammunition, including several

---

[1]A banana clip is a semi-circular clip of ammunition for automatic weapons, approximately ten inches long, capable of holding thirty rounds of ammunition.

[2]A coworker of the plaintiff was also shot and died of his wounds.

banana clips, twenty feet from the living room closet, in a bedroom closet. The defendant neither exercised, nor attempted to exercise, control over the closets where Baptiste stored the weapon or ammunition; never asked Baptiste to store the weapon in a locked cabinet; never refused to allow Baptiste to store his weapon in the residence; and never told neighbors about the weapon. The defendant also knew that Baptiste had a serious drinking problem.[3]

On at least two prior occasions, New Bedford police officers had responded to domestic disturbances at 35 Smith Street and filed police reports. On one of these occasions, Baptiste had attacked the defendant and her brother with a baseball bat. In addition, several of the defendant's neighbors heard her argue with Baptiste frequently, and saw her with bruises after some of these arguments.

We turn to the merits of the plaintiff's claims. The plaintiff first argues that the defendant, as sole owner of the marital home, owed a duty to the plaintiff to prevent Baptiste from storing the rifle and ammunition on her property. In support of his argument, the plaintiff refers to Restatement (Second) of Torts § 318 (1965), set forth below,[4] and reasons from the principles in § 318 that the defendant "could have required [Baptiste] to install locks on the weapons and ammunition storage areas, refused to permit military assault weapons to be stored on the premises, or exercised numerous other measures of control to prevent him from having easy and quick access to a deadly weapon . . . [including] . . . insist[ing] that [her husband] move out."

---

[3]On the day prior to this incident, Baptiste had consumed twenty cans of beer.

[4]"If the actor permits a third person to use land or chattels in his possession otherwise than as a servant, he is, if present, under a duty to exercise reasonable care so to control the conduct of the third person as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the actor

"(a) knows or has reason to know that he has the ability to control the third person, and

"(b) knows or should know of the necessity and opportunity for exercising such control."

The principles expressed in § 318 have no application to the facts of this case. Those principles concern activities by a third person involving the use of the defendant's land itself, see, e.g. *Pease* v. *Parsons*, 273 Mass. 111 (1930), or the use of chattels possessed by the defendant which are provided to the third person. In stating a duty of reasonable care, the principles of § 318 presuppose an owner's ability to control the third persons's conduct and stop it if harm to another is likely. The incident in this case did not involve any use of the property at 35 Smith Street in the sense contemplated by § 318, or a chattel owned by the defendant. She had no legal ability, and, therefore, no accompanying duty, to control her husband's misuse of his own property.

The plaintiff also argues that a duty should be imposed on the defendant "similar to the duty of care breached by those who negligently entrust weapons they own to others, or the duty breached by those who negligently sell weapons to people unfit to own them." On this point, the plaintiff points to the principles stated in Restatement (Second) of Torts, *supra* at § 308,[5] as descriptive of the obligation he urges be applied to the defendant.

This theory is also plainly inapplicable. The defendant entrusted or sold nothing to her husband; the injury was caused by Baptiste's own weapon which was within his control. The plaintiff has referred to no decision that would extend liability on a negligent entrustment theory to a person in the defendant's circumstances. The cases cited by the plaintiff from other jurisdictions principally concern a dangerous instrument *owned by the defendant*, which is lent to an irresponsible person or left where such a person could find and use it. Other cases cited by the plaintiff involve relationships of control between a defendant and the person causing the injury (such as an employer and his employee or a parent and a

---

[5]"It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others."

minor child). None of the cases cited by the plaintiff supports in any way the argument that one can somehow negligently entrust a dangerous instrument to a person who owns that instrument already.[6]

Finally, the plaintiff argues that existing societal customs and values would call for the imposition of a duty on the defendant. We do not agree.

In *Sabatinelli* v. *Butler,* 363 Mass. 565 (1973), the defendant's twenty year old son shot the plaintiff, and the plaintiff sued both the son who shot him and his father. With respect to the claim of negligence against the father, there was evidence that the father knew that his son had been in a "couple of fights," had received psychiatric treatment in the army, and had a drinking problem, *Id.* at 568-569. On the basis of this evidence, we upheld a directed verdict for the father because there was no evidence that the son's problems had manifested themselves to the father in terms of a propensity for reckless or vicious behavior and because there was no evidence that the father knew, or should have known, of his son's misuse or propensity for misuse of guns or other weapons. *Id.* at 570-571.

Similarly, in *McDonald* v. *Lavery,* 27 Mass. App. Ct. 1108 (1989), the plaintiff was shot by the defendants' twenty-seven year old son who was living at his parents' home. The parents knew that their son was an alcoholic, that he became violent when drunk, and that at times he would shoot firearms he owned while intoxicated. *Id.* at 1109-1110. Based on these facts, the Appeals Court upheld summary judgment for the parents because there was no showing that they knew, or should have known prior to the incident, that their son might use firearms in a violent way. Thus, in the parent-child relationship, liability has not been imposed on facts similar to

---

[6]The case cited by the plaintiff that is most similar to this case is *Foster* v. *Arthur*, 519 So. 2d 1092 (Fla. Dist. Ct. App. 1988). In *Foster*, the defendant left her own gun in a location where her boy friend and roommate, a convicted murderer, could easily take it. The boy friend used the gun to kill the plaintiff's decedent. As with the other cases the plaintiff cites, the crucial difference between *Foster* and this case is the ownership of the gun.

those here even though parents arguably are able to exercise more control over their child than a wife can assert over her husband.

In *Petersen* v. *Heflin*, 163 Mich. App. 402 (1987), a daughter sued her parents for the wrongful death of her (the daughter's) husband after her father shot the husband. Insofar as pertinent to this case, the daughter claimed that her mother had been negligent in not restraining her husband's conduct. The Michigan Court of Appeals categorically rejected the daughter's argument that the existence of the husband-wife relationship gave rise to a special duty on the mother's part to control her husband's behavior or to protect others from his conduct.

These decisions are instructive, and none has been found which goes the other way on facts like those present here. Whether there is a duty to be careful is a question of law. *Yakubowicz* v. *Paramount Pictures Corp.*, 404 Mass. 624, 629 (1989), citing *Monadnock Display Fireworks, Inc.* v. *Andover*, 388 Mass. 153, 156 (1983). In our view, sound social policy would clearly not be advanced by a rule which would hold the defendant liable in these circumstances.

*Judgment affirmed.*