Anthony H. & others[1] *vs.* John G. & others.[2]

Middlesex. March 1, 1993. - May 10, 1993.

Present: Liacos, C.J., Nolan, Lynch, O'Connor, & Greaney, JJ.

*Emotional Distress. Negligence*, Emotional distress, Duty to prevent harm, Proximate cause.

The record of a civil trial did not establish a defendant's liability, either for intentional infliction of emotional distress or for negligence, to the younger brother of a minor child whom the defendant had sexually molested, where there was no evidence tending to show either that the younger child had suffered a severe emotional response on learning of the defendant's conduct, or that the defendant could have foreseen that his conduct toward the victim would result in the victim's molesting the younger child in a similar manner. [198-199]

A minor plaintiff who had been sexually molested was not entitled to recover on his negligence claim, based on control of the premises where the offenses occurred, against the mother and the aunt of the adult male who molested him, where the evidence at trial did not support a conclusion that either the mother or the aunt reasonably could have foreseen the harm that occurred, or could have been expected to protect the plaintiff from such harm. [200-201]

CIVIL ACTION commenced in the Superior Court Department on August 9, 1988.

The case was tried before *Patrick F. Brady*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Thomas M. Grady & John J. St. Andre, Jr.*, for the plaintiffs.

*John F. Hurley, Jr.*, for John G.

*Cynthia J. Cohen* for A.D.G. & another.

---

[1] Anthony H.'s parents and his brother, whom we shall call James.

[2] The mother and the aunt of John G. We shall refer to John G. as the defendant.

NOLAN, J. In this case, there was evidence that would warrant the jury's conclusion that the defendant sexually abused a five and one-half year old boy, whom we shall call Anthony. Over a seven-year period from the spring of 1978 to the spring of 1985, Anthony slept at the defendant's house in the defendant's bedroom with the door closed, in the defendant's bed, approximately once or twice each month. Anthony's older brother, whom we shall call Jeremy (older by two years), usually slept in the same room in a sleeping bag on the floor. In this span of time, Anthony was sexually abused between eighty-one and 162 times.

In the spring of 1984, when he was eleven years old, Anthony's behavior at home and in school started to deteriorate. He became angry with his father, refused to go to school, and fought with Jeremy. He "was out of control" at the end of May, 1985, and threatened suicide. Taken to a hospital and physically restrained, he declared that he wanted to die. He was admitted to a psychiatric hospital and was discharged seven weeks later. Not until the end of August, 1985, did Anthony and Jeremy disclose the sexual abuse perpetrated by the defendant on their mother, who reported it to the police.

In the summer of 1983 Anthony began to abuse his younger brother, whom we shall call James, sexually in a game devised by Anthony. This conduct continued into the summer of 1988 when one of their sisters observed them. Anthony was then fifteen years old and James was twelve years old. James then began calling Anthony a "[p]ervert" and a "child molester."

Anthony became increasingly sad and angry, began to smoke marihuana on a regular basis and to drink beer. He then succumbed to LSD and cocaine by the ninth grade.

In 1986, the defendant pleaded guilty to indictments charging indecent assault and battery on Anthony and on Jeremy and unnatural sexual intercourse with Anthony. He was sentenced to prison. In April, 1990, when Anthony learned that the defendant would soon be eligible for parole, he became apprehensive about what he might say or do to

the defendant. Anthony was drinking heavily and took seven "hits" of LSD which made him think that he was dying and that his wrists, neck, and arms were bleeding. He was committed to a psychiatric facility.

At the time of trial of his civil case against the defendant, Anthony was undergoing therapy in a community day center and he continued to be treated by the psychologist who had begun treating him in 1984. This civil action was brought in the name of Anthony by his parents to recover against the defendant for his sexual abuse and against the mother and aunt of the defendant for their negligence in failing to inform Anthony's parents or otherwise prevent the defendant from harming Anthony. The action was also brought in the name of James, Anthony's brother, by his parents for negligence and intentional infliction of emotional distress against the defendant based on the defendant's conduct against Anthony which allegedly resulted in Anthony's sexual abuse of James. The jury awarded Anthony and James substantial damages against the defendant and a more modest award to Anthony against the mother and the aunt. The trial judge allowed the defendant's motion for judgment notwithstanding the verdict as to James and denied Anthony's motion for a new trial against the mother and the aunt.

1. *James's appeal.* At the close of the evidence, the judge submitted certain questions to the jury concerning the defendant's conduct as it affected James. The jury responded affirmatively to questions whether the defendant engaged in reckless conduct which he knew or should have known would likely result in emotional distress to James, and whether such conduct was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community. The jury also found that such conduct caused severe emotional distress to James, and assessed damages. There was no evidence that the defendant ever directly sexually assaulted James.

Another set of questions elicited answers favorable to James on the issue of negligence. The jury found that (1) Anthony's sexual abuse of James was similar to that perpe-

trated by the defendant on Anthony, (2) the defendant's conduct was a substantial contributing factor in causing Anthony to abuse James sexually, (3) it was reasonably foreseeable that Anthony would duplicate the defendant's conduct on James and, consequently, (4) the defendant's sexual abuse of Anthony was negligent as to James. Damages were awarded.

The judge allowed the defendant's motion for judgment notwithstanding the verdict, from which James appeals. See Mass. R. Civ. P. 50 (b), 365 Mass. 814 (1974). There was no error. In evaluating a judge's action on a motion for judgment notwithstanding the verdict, we apply the same standard that is applicable to a motion for directed verdict, i.e., whether in the evidence any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff. *Miles* v. *Edward O. Tabor, M.D., Inc.*, 387 Mass. 783, 785-786 (1982), and cases cited.

James is mistaken in relying on *Nancy P.* v. *D'Amato*, 401 Mass. 516, 519-523 (1988), in his claim for recovery for intentional infliction of emotional distress. In *D'Amato*, we followed Restatement (Second) of Torts § 46 (2) (1965), which requires plaintiffs such as James to be present at the time of the defendant's misconduct toward Anthony. *Id.* at 521-522. We noted in *Nancy P.* that, "[e]ven if the family member's presence were not a condition of liability, we would normally require both (a) substantially contemporaneous knowledge of the outrageous conduct and (b) a severe emotional response." *Id.* at 522. In ruling on the motion, the judge found no evidence that James suffered a severe emotional response on learning of the defendant's molestations of Anthony.

James's claim against the defendant in negligence is no stronger. The record is entirely silent as to evidence that it was reasonably foreseeable to the defendant that Anthony would sexually molest his brother, James, as a result of the sexual molestation of Anthony by the defendant. There was no evidence from which the jury could have drawn a reasonable inference of tortious conduct by the defendant against James.

2. *Anthony's appeal and the cross appeal.* Anthony appeals from the denial of his motion for a new trial against the mother and the aunt. The mother and the aunt filed a cross appeal from the judgment entered against them. The theory of Anthony's case against the mother and the aunt was that, as owners of the premises where many of the sexual incidents occurred, they were negligent in failing to warn Anthony's parents of the unreasonable risk of harm from such sexual abuse. In response to special questions, the jury found that (1) the mother and the aunt were negligent, (2) such negligence caused harm to Anthony, and (3) damages against them as to Anthony should be $25,000. The basis of Anthony's motion for a new trial was that the verdict "was inadequate, against the weight of the evidence, disproportionate to the damages proved, and was not the result of the exercise of an honest and reasonable judgment in accordance with the controlling principles of law."

There was evidence that many of the incidents occurred in the house where the defendant lived with his mother and aunt. They owned the house and on the basis of ownership alone, Anthony argues liability in negligence. Quite correctly, Anthony does not argue that liability be predicated on a parent-child relationship. See *Alioto* v. *Marnell*, 402 Mass. 36, 39 (1988). See also Restatement (Second) of Torts § 316 (1965) (parental duty to control only *minor* children).

Ownership and control of premises may serve as the basis for imposing liability for injuries resulting from the physically dangerous condition of the premises. See *Mounsey* v. *Ellard*, 363 Mass. 693, 707-708 (1973). However, this principle generally does not extend to criminal conduct of third persons, see *Andrade* v. *Baptiste*, 411 Mass. 560, 562-564 (1992), although we have, on occasion, imposed liability on an owner whose negligence permitted a crime to be committed against a resident of the premises. See *Mullins* v. *Pine Manor College*, 389 Mass. 47, 56-63 (1983).

From the evidence presented, it cannot be said that the mother and the aunt could have reasonably foreseen harm to Anthony when the "sleep overs" began or have been ex-

pected to take affirmative action to protect Anthony from such harm. Restatement (Second) of Torts § 318 (1965). Therefore, the verdict was wrong as a matter of law and Anthony was not entitled to a verdict in any amount.

3. *Disposition.* On James's claim against the defendant, the judgment notwithstanding the verdict is affirmed. On Anthony's claim against the mother and the aunt of the defendant, the judgment is reversed and a new judgment is to be entered dismissing the claim.

*So ordered.*