BRUCE APPLE & others[1] *vs.* PETER TRACY.

No. 92-P-914.

Middlesex. April 28, 1993. - June 1, 1993.

Present: BROWN, KASS, & LAURENCE, JJ.

*Negligence*, Social host, Duty to prevent harm. *Actionable Tort.*

In a civil action alleging the defendant's negligence in allowing a known sex offender, who recently had been released from imprisonment on parole or probation, to visit in the defendant's home; in failing to warn neighbors and the police of his guest's presence; and in failing to control his guest, the judge correctly ruled that the defendant, as a social host, did not have a duty to protect third persons from criminal acts of a social guest in the absence of any showing of specific events, occurring after the guest's release from incarceration and known to the defendant, that would lead a reasonable host to anticipate danger. [561-563]

CIVIL ACTION commenced in the Superior Court Department on January 4, 1991.

The case was heard by *George A. O'Toole, Jr.*, J., on a motion for summary judgment.

*Robert F. Casey, Jr.*, for the plaintiffs.

*Charles F. Corcoran, Jr.*, for the defendant.

KASS, J. Eugene Willis sexually assaulted Bruce Apple on September 1, 1991, while Bruce, a minor, was riding his bicycle through woods near his home. Bruce's parents, on behalf of their son and themselves, brought an action charging Peter Tracy with negligence for allowing a known sex offender to visit in the Tracy home, failing to warn the neighborhood or local police to be on guard, and failing to control his guest, thus causing damage to the Apples. A judge of the

---

[1]The parents of Bruce Apple, who each appear as his next friend and individually. The name Bruce Apple is fictitious.

Superior Court dismissed the complaint upon the defendant Tracy's motion for summary judgment. We affirm.

The parties agree that there is no dispute about any material fact and that the case was ripe for disposition on motion for summary judgment. See Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974); *McDonough* v. *Marr Scaffolding Co.*, 412 Mass. 636, 638 (1992); *Beatty* v. *NP Corp.*, 31 Mass. App. Ct. 606, 607 (1991). At the time of the assault, Willis had been staying as a guest of the Tracy household (which included Tracy's wife and sixteen year old son). Their residence was one quarter to half a mile from the Apples' house. Willis had recently been released on condition from prison,[2] a fact known to his hosts, although the precise nature of the crime for which he had been sentenced was not known. For purposes of the motion for summary judgment, the defendant accepted as fact the unsworn allegation of the complaint that, before the sexual assault on Bruce, Tracy had become aware that Willis had been convicted of sexually assaulting a child.[3] Tracy had been acquainted with Willis for twenty years, having first met Willis as a student in an adult literacy class which Tracy was teaching as a volunteer. The Tracys allowed Willis to stay at their house on weekends to help him get on his feet after being released from prison.

As indicated in the introductory paragraph of this opinion, the plaintiffs' theory of liability is that it was actionable negligence on the part of Tracy to have brought Willis into a neighborhood where children lived when he knew, or should have known, that Willis had been convicted and incarcerated

---

[2]There is no specific reference in the record to the place of incarceration although there are references to "Bridgewater," i.e., Massachusetts Correctional Institution, Bridgewater. The complaint and a deposition of the defendant say that Willis was released on parole or probation. The terms are not synonymous, but either involves a decision by lawful authority to release a person on one or more conditions and a decision that release from incarceration constitutes an acceptable societal risk.

[3]The work of the court has been made more difficult by a disorganized record appendix, particularly as to portions of transcript of depositions which are artificially selected and appear in such disjointed fashion that it is sometimes difficult to understand the chronology and to know who is being deposed.

for sexual assualt of a minor, had been hospitalized for a manic-depressive disorder, had a sexual preference for males, and was on probationary status. At the least, the plaintiffs contend, Tracy was negligent in failing to warn neighborhood parents and the local police about the presence of Willis in the Tracy home.

In his memorandum of decision, the Superior Court judge correctly ruled that a social host does not have a duty to protect third persons from criminal acts of a social guest in the absence of events that would lead a reasonable host to anticipate danger. *Husband v. Dubose,* 26 Mass. App. Ct. 667, 670 (1988). See also *Andrade v. Baptiste,* 411 Mass. 560, 563 (1992); *McDonald v. Lavery,* 27 Mass. App. Ct. 1108, 1110 (1989). A lay person, acting reasonably, need not anticipate danger from a person who has been released on probation or parole from a penal institution. The very fact of being placed on probation or parole imports a professional judgment by trained penal and medical personnel that the probationer or parolee does not represent a risk to society outside prison walls. In the absence of specific events, e.g., in this case, an instance of child molestation after release from incarceration known to the defendant, it is hardly reasonable to expect a social host to anticipate perils that responsible State institutions and qualified personnel have not anticipated. *Rozycki v. Peley,* 199 N.J. Super. 571, 578-579 (1984) (wife had no duty to warn neighborhood children or their parents of her husband's pedophilia). Cf. *Anthony H. v. John G.,* 415 Mass. 196, 200-201 (1993).

Expecting ordinary citizens without relevant professional qualifications to make predictive assessments about probationers is all the more doubtful when one considers not only the specialized skills brought to bear by penal and mental health institutions but the institutional processes of the probation and parole systems, which include fact-finding hearings conducted in accordance with constitutional norms. See G. L. 276, §§ 87, 87A; c. 279, § 1A; *Commonwealth v. Durling,* 407 Mass. 108, 112-113 (1990).

Imposition of a duty to warn neighbors of the presence of a probationer or parolee also presents troubling implications for society. Adopting the plaintiffs' position would compel the public to punish probationers with application of a modern-day "scarlet letter," resulting in their being ostracized from the broader community.[4] Such a practice would subvert the rehabilitative intent and effects of probation by stigmatizing released offenders, making all the more difficult their efforts to move into a life free of crime. *Thompson* v. *County of Alameda*, 27 Cal. 3d 741, 757 (1980). It would frustrate the rehabilitative purpose behind legislation which in most instances shields prior convictions from public view. See Criminal Offender Record Information Act, G. L. c. 6, §§ 167-178; *New Bedford Standard-Times Publishing Co. v. Clerk of the Third Dist. Court of Bristol*, 377 Mass. 404, 412 (1979). As the Court observed in *Martinez* v. *California*, 444 U.S. 277, 281 (1980), "the basic risk that repeat offenses may occur is always present in any parole system."

*Judgment affirmed.*

---

[4] "Thus the young and pure would be taught to look on her, with the scarlet letter flaming on her breast . . . as the figure, the body, the reality of sin. And over her grave, the infamy that she must carry thither would be her only monument." Hawthorne, The Scarlet Letter (1850), reprinted in Collected Novels, at 186 (Library of America 1983).