MARIANNE E. MCLAUGHLIN[1] *vs.* NICHOLAS L. VINIOS[2]
& others.[3]

No. 94-P-955.

Norfolk. January 19, 1995. - July 28, 1995.

Present: PERRETTA, KASS, & GREENBERG, JJ.

*Evidence*, Relevancy and materiality, Inference, Judicial discretion, Expert
opinion. *Negligence*, Foreseeability of harm, Proximate cause, One
owning or controlling real estate.

In a negligence action, the judge properly excluded as not relevant certain
evidence proffered by the plaintiff regarding the high crime rate around
a parking garage in which the plaintiff was injured by a speeding motor
vehicle, where the connection between ambient crime and the foresee-
ability of a traffic-related injury in the garage was not demonstrated.
[7-10] PERRETTA, J., dissenting.

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 24, 1992.

The case was tried before *Patrick F. Brady*, J., and a mo-
tion for a new trial was heard by him.

*Paul F. Kenney* for the plaintiff.

*Richard T. Corbett* (*Jacqueline L. Allen* with him) for
Nicholas Vinios & others.

*Joseph B. Bertrand* for Security Police, Inc.

GREENBERG, J. In outline, the facts are these. The plain-
tiff, Marianne E. McLaughlin, accompanied by her husband,
on the evening of April 21, 1989, arrived at the 57 Park

---

[1]Both individually and as mother and next friend of Melissa
McLaughlin and Carolyn McLaughlin.

[2]As trustee of the John Philopoulos Associates Trust.

[3]Helen Philopoulos and Louis Dadasis as trustees of the John
Philopoulos Associates Trust, the 57 Park Plaza Hotel, Inc., and Security
Police, Inc.

Plaza Hotel garage (57 complex).[4] The couple had plans to celebrate her thirty-fifth birthday by attending "Dream Girls," a musical playing at the nearby Colonial Theatre. The plaintiff was about to enter a fifth-floor elevator waiting enclosure, intending to go down to the street level. That area was situated several feet from a right angle turn at the bottom of an exit ramp which came down from the top (sixth) floor of the garage. No bumper blocks or posts protected the area where the plaintiff stood. Nor were there stop signs or devices in place to warn of possible danger. Suddenly, a motor vehicle (later reported as stolen from South Boston) driven by an unidentified operator careened around the corner and sideswiped the plaintiff. The car became snagged on a stanchion, whereupon the operator backed the car over the prostrate plaintiff and drove off. The car was abandoned on the second floor. The driver was never found.

The plaintiff brought an action of negligence against the trustees as owners of the garage, the 57 complex, as operator of the garage under lease, and Security Police, Inc., a company under contract to provide security for the 57 complex. Her children joined in the action seeking to recover for loss of consortium and consequential damages. A Superior Court jury heard the case and in answer to special questions, found that the defendants had been negligent, but that their negligence had not been a proximate cause of the plaintiff's personal injuries. After judgment entered on the verdicts, the plaintiffs filed a timely motion for a new trial, which was denied. Mass.R.Civ.P. 59, 365 Mass. 828 (1974). On appeal, the plaintiff claims that the judge wrongly excluded certain evidence.

1. *Background.* All of the contested evidentiary rulings concern rulings made during the direct examination of two Boston police officers and Norman D. Bates, who testified for the plaintiff as an expert witness on security issues. Two theories of recovery were propounded by the plaintiff: first, that

---

[4]That garage was owned by the trustees of the John Philopoulos Associates Trust and operated by 57 Park Plaza Hotel, Inc., all of whom are defendants.

there was a substantial amount of criminal activity in and around the garage, such that more security guards at the site were required than the management had provided, and second, that the accident was the result of inadequacies in the layout and warning signage of the garage.

The evidence that the plaintiff unsuccessfully sought to introduce included the testimony of a Boston police detective who had made arrests in the area inside the garage and in the general vicinity of the garage; records of the Boston police department regarding criminal activity in the immediate neighborhood for a period of time preceding the accident; and that a "detex" clock system, installed for the purpose of ensuring that security guards were on timely patrol, was not used on the night in question. Upon this "foundation" testimony, Bates was prepared to testify about the enhanced risk of harm to patrons from persons who might engage in criminal activity in the garage. Bates also was prepared to give his opinion that the presence of more security guards at the garage would probably have deterred speeding motor vehicles.

2. *Exclusion of certain evidence regarding prior criminal activity.* Over the plaintiff's objection, the judge excluded evidence of past incidents of prostitution and drug trafficking in the garage and surroundings as irrelevant. Reports of arrests in the general vicinity of the garage were excluded as well. After a lengthy sidebar colloquy, the judge expressed himself as unpersuaded that the driver of the car had committed any crime in the garage. It was equally plausible, as the plaintiff's expert witness, a traffic engineer who specialized in pedestrian movement and safety, stated on cross-examination, "It appears that [the driver was confused about the right turn] because he overshot the turn and spun out." Relevant evidence must render the desired inference more probable than it would be without the evidence. *Poirier* v. *Plymouth*, 374 Mass. 206, 210 (1978). "[I]nferences must be based on probabilities, not possibilities, and may not be the result of speculation." *International Fid. Ins. Co.* v. *Wilson*, 387 Mass. 841, 848 (1983) (citation omitted). In ruling on the point, the judge had substantial doubt that the driver of the

offending vehicle was engaged in any criminal activity on the sixth floor.

The decision whether evidence is relevant remains within the sound discretion of the trial judge. *Anthony's Pier Four, Inc.* v. *HBC Assocs.*, 411 Mass. 451, 477 (1991), and cases cited. A trial judge will not be reversed on review except for palpable error. *Commonwealth* v. *Young*, 382 Mass. 448, 463 (1981). *Commonwealth* v. *Booker*, 386 Mass. 466, 470 (1982).

In the case at bar, the question of relevance of the prior criminal activity is a close one. The principle is settled that evidence of a prior crime at or near the locus may be admitted to prove that the owner failed to take "reasonable steps to protect patrons from injury caused by the foreseeable acts of third persons even if those acts are intentional." *Parslow* v. *Pilgrim Parking, Inc.*, 5 Mass. App. Ct. 822 (1977), and cased cited. Restatement (Second) of Torts § 344 (1965). See also *Fund* v. *Hotel Lenox of Boston, Inc.*, 418 Mass. 191, 192 (1994); *Flood* v. *Southland Corp.*, 33 Mass. App. Ct. 287, 293 (1992), *S.C.*, 416 Mass. 62, 72 (1993) (evidence of police reports about disturbances and fights near store where the plaintiff was attacked was admissible). We think, however, that there was no error in the judge's exclusion of evidence of other crimes committed in the vicinity of the garage in this case. Without any offer of proof about the tendency of the proffered evidence to show that the plaintiff was a victim of a crime committed inside the garage, the judge could limit the introduction of otherwise relevant information. See *Curtiss-Wright Corp.* v. *Edel-Brown Tool & Die Co.*, 381 Mass. 1, 9 (1980). If the links in the chain of causation are overly attenuated the evidence may be excluded as speculative. See *Commonwealth* v. *Chasson*, 383 Mass. 183, 187 (1981); *Maillet* v. *ATF-Davidson Co.*, 407 Mass. 185, 188-189 (1990). When the judge asked plaintiff's counsel at the sidebar, "What evidence do you have that criminal activity was going on on the sixth floor on the night of the accident?," he responded that it was "inferential." We think the judge was correct in deciding that the plaintiff had not made

a connection between ambient crime and foreseeability of traffic-related injury.

The dissenting opinion correctly defines the question before us: whether the jury were entitled to hear evidence of a high rate of crime in and around the garage to assist the jury in deciding if the risk of a speeding automobile striking a garage patron was foreseeable. The chain of logic has to be as follows: there was crime, namely car theft, drug dealing, and prostitution in the vicinity and in the garage; criminals are likely to speed; therefore, it was foreseeable that a car would barrel down the garage off ramp path so fast and reck-lessly that it would strike a patron of the garage. Had there been a history of motor vehicle accidents traceable to speed-ing in this garage or in a like garage the chain of reasoning would be strong enough so that the proffered evidence, in turn, would stand the test of relevance. None, however, was adduced. In cases where the theory of negligent security has overcome the intervening cause defense, the crime which oc-curred has resembled the crimes that historically had hap-pened, crimes against a person. See, e.g., *Mullins* v. *Pine Manor College*, 389 Mass. 47, 58-62 (1983) (rape); *Sharpe* v. *Peter Pan Bus Lines, Inc.*, 401 Mass. 788, 793 (1988), *S.C.*, 406 Mass. 62 (1989) (murder); *Fund* v. *Hotel Lenox of Boston, Inc.*, *supra* at 192-195 (murder); *Magaw* v. *Massa-chusetts Bay Transp. Authy.*, 21 Mass. App. Ct. 129, 132-135 (1985) (mugging). Application of the reasoning of those cases would put liability to the jury had the plaintiff been robbed, mugged, or sexually assaulted. The evidence of am-bient crime did not, however, tend to prove the foreseeability of a traffic-related injury. Trial judges, as previously noted, have discretion to decide close questions of whether proffered evidence is relevant. To some degree this involves the judge in deciding the question of foreseeability. As the classic case of *Palsgraf* v. *Long Island R.R.*, 248 N.Y. 339, 341-342 (1928), illustrates, however, the outer limits of foreseeability have been long defined by judges. See *Barnes* v. *Geiger*, 15 Mass. App. Ct. 365, 367 and n.4 (1983).

3. *Exclusion of the testimony of Norman D. Bates.* As part of her burden of establishing a greater likelihood that the plaintiff's injuries came from an act of negligence for which the defendants were responsible, see *Forlando v. Hughes*, 393 Mass. 502, 507 (1984), the plaintiff sought to introduce the expert testimony of Norman D. Bates, a security consultant. His proposed testimony with respect to traffic safety was excluded upon the judge's preliminary determination that Bates possessed no expertise on that subject. The plaintiff has not challenged, or appealed, the judge's ruling on that particular point.

This leaves the question whether the remainder of Bates' proposed testimony concerning criminal activity around the garage was admissible. Our resolution involves essentially the same inquiry discussed in part 2 of this opinion. The judge could exclude Bates' evidence of ambient crime for the same reasons as he had before, i.e., too attenuated relevance. See as a further example *Toubiana v. Priestly*, 402 Mass. 84 (1988), where an expert opinion on causation was held to be "speculative." *Id.* at 90.[5]

Similarly, we conclude that Bates' testimony on the point did not render the desired inference (e.g., that poor security conditions substantially brought about the plaintiff's injuries) more probable than it would be without the evidence.

*Judgment affirmed.*

---

[5]As the defendants note in their brief, the judge did allow the plaintiff to introduce evidence which, if accepted by the jury, would have supported plaintiffs' claims of negligent security as it related to the accident. Included in the evidence before the jury was testimony that the garage was located in the "Combat Zone"; that, in the past, screeching tires had been heard coming from the garage; that there were no security cameras or telephones in the garage; that security guards were expected to enforce the speed restrictions in the garage; and perhaps most compelling, that the person who was director of security at the defendants' premises after the incident believed that any less than three security guards on duty at the time of the accident was inadequate, and that at the time of the plaintiff's accident only two security guards were on duty.

McLaughlin *v.* Vinios.

PERRETTA, J. (dissenting). Because I conclude that the trial judge was in error in excluding the evidence offered by the plaintiff and because I am unable to "say with substantial confidence that the error would not have made a material difference," *DeJesus* v. *Yogel*, 404 Mass. 44, 49 (1989), I dissent.

According to the testimony of the plaintiff's expert, an accident reconstructionist, the driver of the car came down the garage ramp at a speed of thirty-five miles per hour, jammed on his brakes, went into a skid, hit a parking stanchion that became caught in the car which caused it to proceed at an angle, sideswiped the plaintiff, and careened along a wall. That contact with the wall caused the car to straighten itself. The driver then reversed his direction, backed over the already injured plaintiff, and continued on his way.[1]

The majority conclude that evidence of prior criminal activity in and around the garage was irrelevant and correctly excluded because the plaintiff was not a victim of crime nor did the evidence, as a whole, establish a connection between criminal activity in the garage and the operator of the automobile which struck her.

As I understand the plaintiff's offers of proof at trial and her arguments on appeal, she does not claim that her accident was caused by a breach of the defendants' duty to protect her from criminal activity on the sixth floor of the garage. Rather, the plaintiff's theory of liability is that certain crimes involve a risk of immediate flight, that the defendants knew that those crimes were regularly occurring on the sixth floor of their garage, that the defendants had a duty to protect her from the risk of harm from people travelling in the garage at an excessive rate of speed, and that in breach of

---

[1] I think it important to note that the plaintiff's traffic engineer never opined, as the majority suggests, that "[i]t was equally plausible" that the accident was caused simply by the driver's confusion over the directional signs in the garage. *Ante* at 7. At no time during his testimony did this expert dispute that the driver was going at an excessive rate of speed. Rather, the expert's opinion as to inadequate signage was based, in part, upon the assumption that the accident occurred in the mannner testified to by the accident reconstructionist.

that duty, they failed to provide adequate security and maintenance. See Restatement (Second) of Torts § 302A (1965) ("An act or omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the negligent or reckless conduct of the other or a third person").

Crucial to the issue of the defendants' liability was the foreseeability of the conduct of the unknown driver. "All the circumstances are examined in defining the scope of a duty of care based on the reasonable foreseeability of harm. *Flood* v. *Southland Corp.*, 416 Mass. 62, 72 (1993). *Mullins* v. *Pine Manor College*, [389 Mass. 47,] 56 [(1983)]." *Whittaker* v. *Saraceno*, 418 Mass. 196, 199 (1994). As can be seen from questions asked during deliberations, the jury did focus on the issue of foreseeability.[2] In determining foreseeability and assessing the scope of the duty of care owed by the defendants to the patrons of the garage, the jury heard only that the garage was located in the "Combat Zone" of Boston, that the sound of screeching tires had been heard in the past coming from the garage, that there were no security cameras or telephones in the garage, that security guards were expected to enforce the speed restrictions, that only two security guards were on duty at the time of the accident, fewer than three guards was insufficient, and that directional signs and other devices geared to direct drivers safely around the ramps of the garage were inadequate. What the jury

---

[2]During their deliberations, the jury asked to be reinstructed on the definitions of "significant cause" and "negligence." Included in the trial judge's response is the following: "[T]he defendants are only liable for harm done to the plaintiffs which was reasonably foreseeable by the defendants. If the harm was not reasonably foreseeable by the defendants, then they cannot be held liable. The defendants are not obliged to design or guard against bizarre, unforeseeable accidents. . . ." After deliberating further, the jury asked: "We need some instruction on the following items. Were we instructed that the garage was to prepare for the *worst case scenario &/or reasonable care*?" (emphasis in original). The trial judge repeated his earlier instruction, that is, "If the harm was not reasonably foreseeable by the defendants, then they cannot be held liable. The defendants are not obliged to design or guard against bizarre, unforeseeable accidents."

were not allowed to consider was evidence of the following facts.

Excluded arrest reports would have shown that there was a high rate of crime against people and property, including motor vehicle thefts, in the general area of the garage as well as in the garage itself for a number of years prior to the night in question. Additionally, a detective with the Boston police department was prepared to testify that he had "made hundreds of arrests in and around the parking garage in his years of experience . . . and that this was in fact an area where there was a high incidence of criminal activity on or about April 21, 1989." Based upon the deposition of the defendant Vinios, the plaintiff was prepared to show that the "management of the 57 Park Hotel had been made aware that the sixth floor of the hotel's parking garage was an area to look out for as far as criminal activity . . . that in the late 1980's there were problems with prostitution and drug trafficking occurring on the sixth floor of the 57 Park Plaza Hotel parking garage . . . [and] that in response to the drug trafficking problem . . . a detect clock or station was placed on the sixth floor."

Further, a security guard at the garage on the night in question would have testified, had he been allowed, that the guards never used the detect system, the purpose of which was to insure that they would patrol the sixth floor area. This testimony was excluded on the basis that the plaintiff could not show that the two guards on duty on the night of the accident failed to make their rounds.[3]

There was no challenge to the security expertise of the plaintiff's witness, a security consultant for all types of businesses. Some of the matters about which this expert was pre-

---

[3]Evidence was introduced to show that on the night of April 21, one of the two guards on duty was assigned to the entrance level of the garage for purposes of keeping the "driveway clear of any vehicles" and to direct cars into the parking facility. It was the duty of the second guard to patrol the "hotel complex, the garage and the adjacent facilities." The plaintiff's husband was able to obtain assistance only by calling for the elevator and shouting to a passenger and by running back to his car and calling 911 on his cellular phone.

pared but not allowed to testify were as follows.[4] The expert would have explained that "persons engaging in criminal activities such as prostitution, drug offenses, and motor vehicle theft (stealing or dumping of vehicles) — which occurred frequently and regularly in the Defendants' garage — need to make an urgent and quick exit" and that the "presence of such illicit activity in a garage is recognized to increase the foreseeable risk of motor vehicle accidents such as the one suffered by [the plaintiff]." Additionally, the expert would have testified that the level of crime at the site indicated that the environment was conducive to criminal activity. In the expert's view, the number of security guards provided by the defendants was clearly inadequate. Another security deficiency could be found in the failure to use a monitoring system so that anyone could "know exactly what security personnel were doing or where they were monitoring."

It was the excluded opinion of the expert that "inadequate security on the part of the Defendants was a substantial factor contributing to the occurrence of the incident." The basis for this opinion was that the "highly visible presence of uniformed, adequately trained security guards conducting random patrols within the parking garage and utilizing the watchclock system in place, but not utilized, would have probably deterred the operator of the stolen motor vehicle from travelling at an excessive rate of speed within the parking garage and subsequently overshooting the exit turn and striking [the plaintiff]."

In my view, this evidence was not only relevant to the issue of foreseeability, it also would have filled what the majority hold to be a gap in the plaintiff's proof, that is, that the driver of the vehicle which struck her was engaged in criminal activity in the garage. There was evidence to show that

---

[4]The expert's proffered testimony was based upon his general expertise in matters of security, a site visit, a review of Boston police crime statistics for the area over a pertinent two-and-one-half-year period, a review of the security records of the defendant Security Police, Inc., "relating to reports of reported incidents occurring on the premises," a review of the police reports pertaining to this particular incident, and a review of transcripts of various depositions taken in this litigation.

the driver of the car was not its owner, that the car had been stolen that day from South Boston. Had the jury been allowed to consider the excluded evidence of the long history of prostitution, drug trafficking, and car thefts occurring on an almost daily basis within the garage and surrounding area, they reasonably could have inferred that the driver either drove the car from South Boston to the garage to conduct some illicit business therein and hit the plaintiff as he was fleeing or that the stolen car had been abandoned in the garage by the original thief only to be taken by a second thief who struck the plaintiff as he fled the scene. Either of these inferences is far more reasonable than any notion that the thief drove the car from South Boston, left the car parked in the garage while he conducted off-premise business, and later returned to retrieve the stolen vehicle and speed off to another destination.

Although foreseeability can, as the majority note, involve a question of law, I do not agree that, in the absence of evidence that the driver had been engaged in criminal activity in the garage or of a showing of a "history of motor vehicle accidents traceable to speeding in this garage or in a like garage," *ante* at 9, the risk of harm in the instant case was beyond the "outer limits of foreseeability." *Ibid*. "Nor is reasonable expectation of injurious consequences to be determined by the fact that no similar injurious result has been known to follow a like wrongful act under identical attending circumstances. . . . It needs no illustration to demonstrate that danger may be present although injury has not yet occurred. . . . [T]o give validity to such [contrary] contention would lead to the anomalous result noted in *Texas & P. Ry. Co.* v. *Carlin*, 111 F. 777, 781, 60 L.R.A. 462 (C.C.A. 5), 'That for the first, and perhaps the second, injury occurring in such manner there could be no recovery; but for the third, or when the circumstances ceased to be peculiar or became familiar, the defendant would be liable.'. . . We think the true rule to be that when the thing done produces immediate danger of injury, and is a substantial factor in bringing it about, it is not necessary that the author of it should have

had in mind the particular means by which the potential force he has created might be vitalized into injury." *Johnson v. Kosmos Portland Cement Co.*, 64 F.2d 193, 196 (6th Cir. 1933).

I think the excluded evidence would have warranted the jury finding that certain crimes involve an element of flight, that the risk of injury from drivers speeding in the garage is increased when those crimes are there taking place, that the defendants were aware that such criminal activity was occurring on a regular basis on the sixth floor of the garage, that the defendants failed to take adequate security and maintenance measures to protect against the increased risk of speeding in the garage, and that the "probable consequence of [the defendant's] acts was that the harm of the same general character as that which came to the plaintiff would come to persons who stood in the same general relation to the defendant[s] as the plaintiff." *Magaw* v. *Massachusetts Bay Transp. Authy.*, 21 Mass. App. Ct. 129, 134 (1985), quoting from *West* v. *Molders Foundry Co.*, 342 Mass. 8, 12 (1961). See also Restatement (Second) of Torts § 344 comment f and § 449 comment b (1965). I would reverse the judgments and remand the matter for a new trial.