Jane DOE

v.

**Ronald MERCER, Michael Irvin, Chauncey Billups, and Antoine Walker.**

**Civil Action No. 98–10649–RGS.**

United States District Court, D. Massachusetts.

Dec. 18, 1998.

Margaret A. Burnham, Carolyn Clark, Burnham, Hines & Dilday, Boston, MA, Charles Ogletree, Harvard Law School, Cambridge, MA, for Jane Doe.

Marcia K. Sowles, U.S. Dept. of Justice, Civil Div., Washington, DC, David S. Mackey, U.S. Attorney's Office, Boston, MA, for U.S.

Dennis J. Kelly, Anthony J. Fitzpatrick, Burns & Levinson, Boston, MA, for Ronald Mercer.

Willie J. Davis, Davis, Robinson & White, Boston, MA, Dennis J. Kelly, Burns & Levinson, Boston, MA, for Michael Irvin and Chauncey Billups.

Nicholas C. Theodorou, David A. Anderson, Foley, Hoag & Eliot, Boston, MA, Dennis J. Kelly, Burns & Levinson, Boston, MA, for Antoine Walker.

Alice E. Richmond, Richmond, Pauly & Ault, Boston, MA, Julie Goldscheid, NOW Legal Defense Fund, New York City, for Legal Defense and Education Fund.

### MEMORANDUM AND ORDER ON DEFENDANT ANTOINE WALKER'S MOTION TO DISMISS

STEARNS, District Judge.

Jane Doe, a pseudonymous plaintiff, alleges that defendant Antoine Walker was negligent in failing to come to her aid while she was being raped by defendants Michael Irvin, Ronald Mercer and Chauncey Billups. The sexual assault allegedly occurred in Walker's home. The defendants are professional basketball players and teammates.

The legal standard is familiar. "We must accept the allegations of the complaint as true, and if, under any theory, the allegations are sufficient to state a cause of action in accordance with the law, we must deny the motion to dismiss." *Vartanian v. Monsanto Company*, 14 F.3d 697, 700 (1st Cir.1994).

For present purposes, the material allegations can be sketched briefly. Doe spent the evening of November 9, 1997, socializing at a club with the four defendants and others. At the end of the evening, Irvin invited Doe to a home that he shared with Walker in Waltham, Massachusetts.[1] Irvin stated that he had been asked to extend the invitation by Walker, whom Doe had previously dated. Upon arriving at the home, Doe was taken to Irvin's bedroom. There she was sexually assaulted by Irvin, Mercer and Billups. During the assault, Walker entered the bedroom. When Irvin asked if he wanted to have sex with Doe, Walker declined.

■ Doe's claim against Walker is framed on a common law duty of care allegedly owed to her by Walker as a "social host." Massachusetts law imposes a duty of care on a "social host" in limited circumstances involving the serving of liquor to guests. While a social host has no duty to prevent an adult guest from injuring herself as the result of voluntary intoxication, *Manning v. Nobile*, 411 Mass. 382 389–390 & n. 9, 582 N.E.2d 942 (1991), a social host may be liable to a third party injured by a guest to whom the host served liquor despite knowing (or having reason to know) that the guest was intoxicated. See *McGuiggan v. New England Tel. & Tel. Co.*, 398 Mass. 152, 162, 496 N.E.2d 141 (1986) (dictum).

■ A second category of cases imposes a duty on a property owner to protect invitees with whom he has a special relationship from the foreseeable criminal acts of third persons. An example is *Mullins v. Pine Manor College*, 389 Mass. 47, 51, 449 N.E.2d 331 (1983), which held that a college had a duty to "protect the well-being of [its] resident students, including seeking to protect them against the criminal acts of third parties." This duty, according to the Court, is derived from the vestiges of the doctrine of en loco

---

1. Doe states that she traveled to Waltham in a car driven by Billups. Mercer and Irvin were fellow passengers. Walker left the club in a separate vehicle. Doe did not see Walker when she arrived at his home.

parentis and from the fact that the college had voluntarily assumed the duty of protecting its students. Other special relationships that give rise to a duty to protect include the relationships between certain commercial establishments (theaters, restaurants and taverns) and patrons, hotel owners and guests, and common carriers and passengers. Id. at 53 n. 9, 449 N.E.2d 331.

One Massachusetts Appeals Court case, *Husband v. Dubose*, 26 Mass.App.Ct. 667, 531 N.E.2d 600 (1988), implies that the relationship between a host and an invited guest might give rise to a duty to protect, but only in the most qualified of circumstances.

> Unlike common carriers, bars and other businesses, colleges, or even hospitals which have been held to be required to foresee that their patrons, students, or patients could suffer criminal attacks by third persons, social hosts ordinarily would not be expected to anticipate that a guest in their home or apartment might be violently attacked with a deadly weapon by another guest. Further, neither "the nature of the situation," nor "existing values and customs," dictate that social hosts have a duty to protect their visitors or to make their property safe from such criminal acts. Hosts normally do not voluntarily assume such obligations, and visitors ordinarily do not rely or depend upon their hosts for such protections. In the absence of a situation showing that a danger should have been anticipated, or customs which clearly impose a duty of protection or a preferred form of response, hosts should not be charged, at the risk of liability, to furnish security at social gatherings or to

**2.** Plaintiff cites *McKinney–Vareschi v. Paley*, 42 Mass.App.Ct. 953, 955, 680 N.E.2d 116 (1997), for the proposition that ownership of property alone creates a duty as a social host. The case, however, is not a social host case, but rather a premises liability case involving the foreseeability of a rape occurring on a commercial parking lot.

**3.** Foreseeability is usually gauged by reference to crimes of a similar nature that have occurred at or near the locus that give notice to the landowner of the need for enhanced security measures. *McLaughlin v. Vinios*, 39 Mass.App.Ct. 5, 8, 653 N.E.2d 189 (1995).

call the police every time a guest becomes unruly. (Citations omitted).[2]

Id. at 671, 531 N.E.2d 600.

██ 'A final category of cases derives a duty to protect from a landowners' obligation to maintain his premises in a reasonably safe condition. See *Mounsey v. Ellard*, 363 Mass. 693, 708, 297 N.E.2d 43 (1973). These cases usually turn on a safety defect in the premises, most often the failure of the property owner to provide adequate security measures like locks, gates and lighting. The stress in these cases is on foreseeability. The law does not impose liability on a landowner for a third-party criminal attack that was not reasonably foreseeable.[3] See *Whittaker v. Saraceno*, 418 Mass. 196, 197, 635 N.E.2d 1185 (1994); *Griffiths v. Campbell*, 425 Mass. 31, 35, 679 N.E.2d 536 (1997).

██ I turn now to the allegations of the Amended Complaint. I will assume that the double hearsay statement attributed to Irvin, that he was speaking for Walker in extending the invitation to Doe, is sufficient to support an inference that Walker assumed the duties of a social host. The negligence claim, however, fails for a simple reason. There is no basis upon which one could, from even the most liberal reading of the Amended Complaint, conclude that Walker had any reason to foresee that Doe would be attacked by his teammates.[4] Doe's counsel conceded this at the hearing, stating that Doe is not claiming that Walker should or could have prevented the attack, but that instead he should have intervened to halt it. According to the Amended Complaint, Walker became aware of the fact that Doe was being sexually accosted by his teammates when he entered Irvin's bedroom, observed sexual activity,

**4.** Any claim that Walker should have exerted control over Irvin (assuming that Irvin was a guest in Walker's home rather than a cohabitant as Walker insists he was) would fail for the same reason. "[A] social host does not have a duty to protect third persons from criminal acts of a social guest in the absence of events that would lead a reasonable host to anticipate danger." *Apple v. Tracy*, 34 Mass.App.Ct. 560, 562, 613 N.E.2d 928 (1993). Cf. *Andrade v. Baptiste*, 411 Mass. 560, 563, 583 N.E.2d 837 (1992) (home owner wife had no duty to control her husband's dangerous activities in the residence).

and was asked by Irvin if he wanted to participate. Assuming from these alleged facts that Walker should have recognized that the assault on Doe was non-consensual,[5] the law, with rare exceptions, imposes no duty on a witness to a crime to intervene in aid of the victim.[6] Rather, the law discourages such intervention, as much as human sentiment applauds the good Samaritan. The law is so for reasons of social policy that are intended to curb vigilantism and to avert the risk of untrained civilians causing personal injury to themselves or creating an even greater risk of danger to the victim. See *Restatement, Second, Torts* § 314 ("The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose a duty to take such action").[7] Cf. *United National Ins. Co. v. Penuche's, Inc.,* 128 F.3d 28 (1st Cir.1997).

### ORDER

For the foregoing reasons, defendant Walker's Motion to Dismiss is *ALLOWED.*

SO ORDERED.

---

**5.** This is a questionable proposition because Doe alleges only that Walker observed that group sex was occurring. She implies that a reasonable observer would ordinarily infer that a woman engaged in sexual activity with more than one man is acting under coercion. This assumption runs contrary to contemporary beliefs about the emancipation and autonomy of women.

**6.** The exceptions generally involve persons having physical and legal custody of others. See G.L. c. 265, § 13J (recklessly permitting injury by another of a child in one's custody); *Commonwealth v. Adams,* 416 Mass. 558, 565, 624 N.E.2d 102 (1993) (police officer has a duty to protect a prisoner from the excessive use of force by fellow officers). The law will, also, impose liability where one affirmatively acts to prevent a third party from rendering aid. See *Commonwealth v. Marcelli,* 14 Mass.App.Ct. 567, 568, 441 N.E.2d 270 (1982).

**7.** "The result of the rule has been a series of older decisions to the effect that one human being, seeing a fellow man in dire peril, is under no legal obligation to aid him, but may sit on the dock, smoke his cigar, and watch the other drown. Such decisions have been condemned by legal writers as revolting to any moral sense, but thus far they remain the law." *Id.,* comment c.