Fecteau, J.
The defendant has filed the above motion generally on the grounds that as an owner of real property at which she resides, she owes no duty to the innocent victim of a shooting that occurred by means of a firearm owned by her live-in companion, but which had been stolen and used by his adult son who did not reside with him or the defendant, notwithstanding her knowledge that firearms were being stored by her companion in her house. The plaintiff contends that as an owner of real properly, the defendant has a duty of care, concurrent with the owner of the firearm, to store it safely, and, in breach of such a duty, she is liable to third parties who are injured as a result. The plaintiffs case sets forth causes of action sounding in common-law negligence, negligence founded upon a breach of a safety statute, strict liability and public nuisance. For the following reasons the defendant’s motion for summaiy judgment is ALLOWED.
BACKGROUND
The following facts are taken from the summary judgment record and all material facts are undisputed.
On May 10, 1999, Lawrence M. Jupin (Officer Jupin), was shot and injured while in the course of his duties as a Westminster Police Officer in the Town of Westminster, Massachusetts. The plaintiff alleges that Officer Jupin was shot by Jason Rivers, the son of the defendant’s live-in boyfriend. The defendant, Sharon Kask (Kask), lives in Fitchburg, Massachusetts, with her boyfriend Willis Rivers (Mr. Rivers). Mr. Rivers’ adult son, Jason Rivers, is not related to Kask and did not reside with Kask and his father on the day of the shooting. Mr. Rivers kept his firearms in a cabinet fashioned with a lock in the cellar of Kask’s home. Kask contends that the cabinet was locked on the day of the shooting.
The plaintiff alleges that Jason Rivers stole the gun used in the shooting from his father’s gun cabinet by removing the screws on the gun cabinet, taking the gun, and then replacing the screws to cover up the theft. Neither Kask nor Mr. Rivers knew Jason Rivers had stolen a gun from the cabinet. Kask never used or handled any of the guns owned by Mr. Rivers in the time that he stored them in the cabinet in her home.
DISCUSSION
Summaiy judgment shall be granted where there are no genuine issues as to any material fact and where the moving parly is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Cassesso v. Comm’r of Corr., 390 Mass. 419, 422 (1983); Cmty. Natl Bank v. Dawes, 369 Mass. 550, 553 (1976). The existence of disputed facts is consequential only if those facts have a material bearing on the disposition of the case. Norwood v. Adams Russell Co., 401 Mass. 677, 683 (1988). The moving parly bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summaiy judgment record entitles him to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. Gen. Motors Corp., 410 Mass. 706, 716 (1991).
I. Negligence Claim
Regarding common-law negligence, the defendant relies upon the line of cases represented by Andrade v. Baptiste, 411 Mass. 560 (1992), in which the court held that a woman could not be found to owe a duty to a bystander from the ownership and use of a firearm by her husband who also had a histoiy of alcohol abuse. Among other firearms cases relied upon by the defendant and the Andrade court are Sabatinelli v. Butler, 363 Mass. 565 (1973), and McDonald v. Lavery, 27 Mass.App.Ct. 1108 (1989). The plaintiff seeks to distinguish these cases from the case at bar with the point that in each of the decided cases, the defendant was an immediate family member of the gun owner and shooter, and thus without any recourse to prohibit or control conduct, whereas here, the defendant was not married to or otherwise related to the owner of the weapon and, therefore, with a right to prohibit the introduction of weapons into her house or to insist upon greater security, enforceable by revoking a license to occupy her home.
*618 Notwithstanding this distinction, the situation presented herein is analogous to the cases involving the denial of claims of duty owed by social hosts, simply by reason of ownership and control over the premises, in connection with: injuries sustained by fireworks brought to their home by guests that injure other guests (see Luoni v. Berube, 431 Mass. 729 (2000), Flanagan v. Baker, 35 Mass.App.Ct. 444 (1993)), a guest’s excessive use of alcohol that is neither served nor made available by the homeowner that causes injury to third parties, including other guests and passersby (see Ulwick v. DeChristopher, 411 Mass. 401 (1991), Wallace v. Wilson, 411 Mass. 8 (1991)), or “the criminal acts of a social guest that cause injury to a third party in the absence of events that would lead a reasonable host to anticipate danger.” Anthony H. v. John G., 415 Mass. 196, 200 (1993); Pollard v. Powers, 50 Mass.App.Ct. 515, 518 (2000); Husband v. Dubose, 26 Mass.App.Ct. 667, 670 (1988).
Nor is this case sufficiently analogous to Sojka v. Dlugosz, 293 Mass. 419 (1936), a case relied upon by the plaintiff to provide support. There, the owner of the gun left it unsecured and easily obtainable where it was taken by his son who injured the plaintiff when he accidently fired it — factors not present in this case.
With respect to the statute upon which the plaintiff relies, G.L.c. 140, §131L, the plaintiff contends that an alleged violation of such a safety statute by the defendant homeowner is evidence of negligence sufficient to withstand a motion under Mass.R.Civ.P. 56. The defendant contends, and this court agrees, that its requirements for any firearm to be equipped with a trigger lock or kept in a securely locked container apply only to the licensed owner of the firearm, as the statute is a part of a specific licensing statute with respect to the purchase, sale, ownership and carrying of firearms, i.e., G.L.c. 140, §§121-31P, which includes criminal penalties for violations thereof. Moreover, as a part of the duties upon licensed gun dealers, the law imposes an express duty imposed upon a licensed dealer to post in a conspicuous location in the retail premises the statutory obligations of secure storage. G.L.c. 140, § 123. A person who neither purchased the weapon nor owns it would not come into contact with this notice. Implicit in such a directive is that the person who purchases the firearm is the intended beneficiary of the warning and upon whom the duty to secure safely rests.
For the foregoing reasons, the defendant’s motion for summary judgment as to the plaintiffs negligence claim is allowed.
II. Strict Liability Claim
In connection with the plaintiffs argument for imposition of strict liability under Rylands v. Fletcher (L.R. 3 H.L. 330 (1868)), for an ultra-hazardous activity, the analogy that appears closest to the facts in question is the line of blasting cases. However, strict liability from blasting activity is limited to situations where the damage is direct, i.e., when rock falls on adjoining property and causes damage, and the defendant himself or someone he hired and at his direction engaged in the blasting operation. O’Connor v. E.J. DiCarlo & Sons, Inc., 376 Mass. 927, 928 (1978); The Clark-Aiken Co. v. Cromwell-Wright Co., 367 Mass. 70, 83 n.14 (1975). Strict liability has specifically been held not to apply where the injury is not the direct consequence of the defendant’s blasting activities. O’Connor, 376 Mass, at 928. Here, Officer Jupin’s injuries may have been caused by a bullet from one of the guns stored in Kask’s basement, but his injuries cannot be said to be the direct consequence of any activity undertaken by Kask.
Courts have also declined to impose strict liability where the resulting damage from the activity in question was not a “natural consequence” of the escape of the dangerous item, but rather was caused by the intervening act of a third person. Charles Cohen v. Brockton Sav. Bank, 320 Mass. 690, 693 (1947) (rule of strict liability not imposed on property owner where basement's steam heater pump was subject of vandalism which the defendant had no reason to anticipate by third person over whom defendant had no control); Kaufman v. Boston Dye House, Inc. 280 Mass. 161, 169 (1932) (injury to plaintiff was not a “natural consequence” of the escape of flammable cleaning product used by defendant, but was caused by the setting on fire of the cleaning product by a third person). Furthermore, no Massachusetts court has imposed strict liability on the storage of firearms. The Andrade decision demonstrates that the Supreme Judicial Court intended homeowner liability for the storage of firearms to be imposed — if at all — under the standard of negligence. See Andrade, 411 Mass, at 563-65.
To impose a standard of strict liability in this case is inappropriate. Accordingly, defendant’s motion for summary judgment as to the plaintiffs claim is allowed.
III. Public Nuisance
The plaintiffs final claim alleges that the storage of the firearms in the cabinet on Kask’s property constitutes a public nuisance. The plaintiff has offered no Massachusetts case law or statutory authority imposing liability under a theory of public nuisance for a homeowner’s storage of firearms.
In contrast to a private nuisance action, “[a] nuisance is public when it interferes with the exercise of a public right by directly encroaching on public property or by causing a common injury.” Taygeta Corp. v. Varian Associates, Inc., 436 Mass. 217, 231 n.15 (2002); Connerty v. Metropolitan Dist. Comm’n, 398 Mass. 140, 148 (1986). Public nuisance cases other than those involving highways and navigable streams, which clearly are not applicable in this case, suggest that public nuisance has some hint of the *619 elements of private nuisance and usually involve an interference to members of the public beyond the limits of a particular property, such as the keeping of diseased animals or the maintenance of a pond breeding malarial mosquitoes. Leary v. City of Boston, 20 Mass.App.Ct 605, 610 (1985). Nuisance liability must be “based upon a determination that the interference [complained of] is intentional and unreasonable or results from conduct which is negligent, reckless or ultrahazardous.” Stop & Shop Companies, Inc. v. Fisher, 387 Mass. 889, 891 n.2 (1983).
The storage of firearms in a locked cabinet in a homeowner’s basement cannot be said to be an interference to members of the public beyond the limits of a particular property which is intentional and unreasonable, or conduct which is negligent, reckless or ultrahazardous. Id.; Leary, 20 Mass.App.Ct. at 610. Property owners are permitted to store firearms in their homes and licensed gun owners can possess guns, as long as they secure them in a locked container or equip them with a tamper-resistant mechanical lock or other safety device. G.L.c. 140, §131L.
To hold the storage of firearms constitutes a public nuisance is inappropriate. Accordingly, defendant’s motion for summary judgment as to the plaintiffs claim is allowed.
ORDER
For the forgoing reasons, it is hereby ORDERED that the defendant’s motion for summary judgment be ALLOWED.